Chancery.

Case 72.

January 23.

Case stated.

# Burnsides' Administrator *vs* Wall.

## Error to the Garrard Circuit.

### *Wills. Devises. Conversion.*

Chief Justice Marshall delivered the opinion of the Court. To this opinion a petition for re-hearing was filed and the opinion suspended until 2d July, 1849, when the suspension was removed.

By his last will, executed in July, 1839, and admitted to record in the following December, Robert Burnsides, after directing the payment of his debts, devises to his wife during her life or widowhood, all his land and plantation, together with such household and kitchen furniture as she might select, and also eight slaves by name, of whom one was to be free at a designated period. He also devised to her absolutely, a considerable amount of personal estate. He then directs his slaves not devised to his wife nor otherwise disposed of by the will, to be divided into seven equal shares or lots, of which he gives one share in trust, for the use and benefit of the children of a deceased daughter, and one in trust, for each of five living daughters and their children, declaring it to be his intention to make an equal division of his slaves, and to secure to each of his daughters and their children, the slaves so devised, against any and all casualties. He then gives one slave absolutely to his son Robert, to whom he also gives an additional slave designated by name, having made a like gift to each of his daughters, on marriage. The fourth clause of the will is as follows: "After the death or termination of the estate hereby devised to my wife, it is my will that all my land be sold by my executors, upon such terms as they may deem expedient, and the proceeds thereof be equally divided between all my children or their descendants, giving to the descendants of such as may die, the same share that the parent would be entitled to if living. And it is also my will, that the slaves above devised to her, except Dick, (the one to be

BURNSIDES' AD.
*vs*
WALL.

emancipated,) after the termination of her estate in them, be equally divided between all my children or their descendants, and when allotted, the slave of each daughter to pass in trust, as directed in relation to my other slaves." The fifth clause devises one acre around his grave yard to his son. The sixth contains directions for producing equality in the division, &c. The seventh is as follows: "It is further my will, that as soon as convenient after my death, all my personal property not above devised, consisting, &c., with all money due me, or in possession, be equally divided between my children and their descendants, as above directed." And then follows this sentence—"It being my wish and intention to secure the slaves and their increase to my daughters or their children, against all claims or demands against their husbands. But in relation to all the residue of my estate, I direct and intend the devise to be absolute to each of my children."

Some time after the testator's death, Nancy Wall, one of the testator's daughters, and the wife of Michael Wall, died, leaving her husband and one child, born as we understand, but a short time before her death, and which died not long after it, leaving Michael Wall still surviving. Afterwards, in 1845, an arrangement was made between the other six claimants under the will, and the widow of the testator, by which she surrendered for the purposes of the will, the land and personalty devised to her for life, to be sold and the proceeds to be distributed as therein directed; and also surrendered the slaves to be divided according to the will, in consideration of which she was to receive from the other parties to the arrangement, twelve hundred dollars, to be paid as the instalments for the land should fall due, but to be repaid at her death. Under this arrangement, the slaves were divided among the other devisees, excluding Wall, and the land and personalty were sold.

In February, 1846, M. Wall filed this bill, claiming one seventh part of the slaves thus surrendered by the devisee for life, and one seventh part of the proceeds of the land and personalty surrendered by her. We do not understand the bill as setting up any claim on

The object of Wall's bill.

Burnsides' Ad.
vs
Wall.
account of the slaves and personalty not embraced in the devise to the testator's widow, and which, as we suppose, were divided and distributed shortly after his death. Nor do we understand it as making any claim on account of the personalty devised absolutely to the widow, to which he certainly has no colorable claim.

The surviving devisees and the administrator, (with
The defence made to his claim.
the will annexed,) resist the claim thus restricted, on the ground—first, that under the will, the complainant has no interest, and never can have any in the property devised to the widow for life, or in the proceeds of such part of it as is directed to be sold. And second, that if he has any interest, it is only to be enjoyed after the death or marriage of the widow, and that he is not entitled to any benefit under the arrangement made with her.

The Court, however, decided that the estate devised
The decision of the circuit court.
to the widow was at an end, and that the complainant was entitled to the share of one seventh which his wife or child would have received if alive, and decreeing to him one seventh part of the proceeds of the land, (for which he was decreed to pay one seventh of the stipulated consideration,) directed an inquiry as to the number, value and hire of the slaves, and the proceeds of the personalty, preparatory to the final ascertainment and satisfaction of his claim.

We have stated the arrangement made with the de-
Those in remainder purchased out a life estate in land of a widow, to be paid for in part of the proceeds of the land—Held that all in remainder might claim to be interested in and entitled to the immediate possession of the estate or its proceeds.
visee for life, as a surrender of her estate in the land and other property devised to her for life, because that was its legal as well as actual effect. And although we might not concede that one or more of the ultimate devisees could not have purchased her interest and held it for their own exclusive benefit until her death or marriage, we are satisfied that the purchase having been made for the express purpose of expediting the execution of the ultimate devises, and for the express benefit of the ultimate devisees without exception, and being to be paid for in effect by the proceeds of the sale, to which all were entitled, the life estate under the will was terminated for the benefit of all, and consequently that the complainant, Wall, is as much entitled to par-

BURNSIDES' AD.
vs
WALL.

ticipate in the property or its proceeds, upon this termination of that estate, as if it had been terminated by death or marriage. If he has an interest, he is embraced by the terms of the arrangement, as well as by its effect, altough the immediate parties to it supposing that he had no interest, may have considered him as not embraced, or may have intended to exclude him.

The important question is, whether upon the termination of the life estate, he had any interest in the legacies or devises then to come into possession. In other words, did those legacies or devises so vest either in his wife or his daughter, that he as the survivor is entitled either in the character of husband, or heir, or personal representative, or next of kin to either of them, to the share to which either would have been entitled if she were now living? If the will had simply directed the land (after the limitation of the life estate,) to be divided among his children, Mrs. Wall, as one of the testator's children living at his death, would have had a vested remainder in one undivided seventh part of the land, which on her death would have descended to her daughter, and on the death of the daughter in infancy, would have descended not to her father, because it had come by descent from her mother, but by force of the sixth section of the act of 1796, (*Stat. Law*, 563,) would have descended to her mother's brothers and sisters, and the descendents of such of them as were dead. And such would be the result as to any interest in the land, as land which may have vested in Mrs. Wall or her daughter, if it was transmissible according to law, and was not controlled by the will. The complainant, thus excluded as heir, would also be without right as tenant by the curtesy, because there had been no seizin of the land in right of his wife during the coverture. And it being entirely clear that the actual terms of the devise, admit of no construction which would give him any interest as a direct devise, it follows that so far as the land is to be regarded as retaining that character under the will, and if until the time when the sale is directed to be made, the interests of the ultimate devisees as such, are to be regarded as in-

Land devised to the widow for life and then to be divided between the testator's children, gives a valid interest in all the children living at the death of the testator.

Land is devised
to the widow for
life, then to be
sold and the pro-
ceeds divided a-
mongst the tes-
tator's children.
Those entitled to
the ultimate es-
tate purchase out
the life estate;
one of the devi-
sees, a daughter,
dies, leaving one
child—the child
dies—Held that
the life estate
not being deter-
mined at the
death of the fe-
male devisee in
remainder, and
there being no
conversion du-
ring the life of
the child, that
the father of the
child could claim
no part of the
price of the land.

terests in land, and transmissible as such, the complain-
ant not being a devisee, nor invested by operaton of
law with the rights of a devisee, would have no plau-
sible ground for claiming an interest in the subject.

He therefore claims in his bill, that the testator hav-
ing peremptorily directed a sale of the land and a divis-
ion of the proceeds among his children or their des-
cendants, the land in equity is to be considered as con-
verted into money or personalty, and that as such he
is entitled to it upon the events which have happened.
We do not admit, however, that the land is to be re-
garded for all purposes, as being converted before the
time or event when the sale might properly take place.
And if the question were, what became of the land, or
of any interest in it, upon the intermediate death of any
devisee, we would say that so far as it is not disposed
of by the will, it passed according to the laws govern-
ing the transmission of real estate: *Christler* vs *Meddis*,
(6 *B. Monroe*, 37;) *Larkin* vs *Chambers*, (*Ms. opinion*,
*July*, 1845.) But the question is not in what course
the land or any interest in it created by the will would
have passed, but in what course the right to the pro-
ceeds passed, upon the death of any of the persons
who might have been entitled, if living when the sale
should have been made. And although the right to re-
cover the proceeds gives the right to take the land in
lieu of them, this latter right being a mere incident of
the former, cannot control the course of its transmis-
sion, but is controlled by and follows it, and in fact does
not exist except in the persons entitled to receive the
proceeds, and therefore cannot aid in determining who
are so entitled.

In whatever character the land itself, in view of the
will, is to be regarded during the continuance of the
estate of the testator's widow, we are of opinion that
the disposition made of the proceeds is to be regarded
as a bequest of money, to be raised by the sale of land,
and that so far as the will leaves its transmission prior
to the time when the land may be turned into money
uncontrolled, its transmission is to be governed by the
rules applicable to such bequests, and not by the rules
relating to devises of real property.

The paramount rule, however, in relation to both subjects, is that the intention of the testator is to be ascertained from the will, and if sufficiently expressed, and not in violation of law, is to be effectuated according to the will. All rules for the ascertainment and effectuation of the testator's intention, are but means for the attainment of this object, and are subordinate to the great rule, that the manifest intention, if agreeable to law, must prevail.

Having ascertained that the disposition made of the proceeds is not a devise of any interest in the land, but a bequest of money to be raised by its sale, it is scarcely necessary to say that the devise of the land to one for life, and then of the proceeds of its sale to others, does not create either a particular estate with a remainder in the land, or a particular interest with a remainder upon it in the money, because the subjects of the two devises being distinct, they cannot coalesce and form one estate which may be considered as parcelled out among different persons with respect to the period of enjoyment: (*Williams on Executors*, 778; *Fearne on Remainders*, 554; 3 *Atk.* 219; 3 *Russ. ch. ca.* 124.) And therefore the rules applicable to the vesting of remainders, either in personal or real estate, at the same time with the particular estate with which they are connected, do not apply. And as this is not merely a bequest to the testator's children, or to all his children as a class, to be paid at a future time, or on a future event, the rule applicable to such a case, that the interest is to be considered as vested in the children living at his death, (and in a posthumous child should there be one,) so far as to be transmissible according to law on the subsequent death of any of them, is not applicable. The express provision being sufficiently comprehensive in its own terms to embrace and provide for all possible descendants of the testator at the time when the legacy is to be raised and paid, there is neither necessity nor room for any construction founded on the presumed intention of providing for all.

The question rather is, whether under a provision embracing expressly all descendants who could be his

**[margin:]** BURNSIDES' AD. vs WALL.

In the construction of wills the manifest intention of the testator is to govern, if not against law and all rules of construction, ave observed for this end.

Land directed to be sold after the termination of a

BURNSIDES' AD.
*vs*
WALL.

life estate and the proceeds divided amongst the testator's children and their descendants, there being no descendants of one of the children at the time of the termination of the life estate, none other can take as heir to the last descendant of such as his heir.

heirs at the period referred to, and for whom he ought to provide, other persons not heirs or descendants, can come into the distribution, claiming by operation of law in right of a deceased child or descendant, and thus diminish the fund directed expressly to be divided among all the testator's children or their descendants. And although it be conceded that the enjoyment of the legacy, that is, the distribution of the proceeds of the land is postponed, not on account of any motive affecting the persons who might come under the description of "children or their descendants," at the death of the testator, but from a regard to the life estate, and because during its continuance the land could not be sold, still if it appear clearly that the testator did not intend that the persons then coming within that description were to have it at all events, but that upon the death of any of them, or of others coming after them, who might answer the description, the testator still intends to control the devolution of the right until the time when the sale and distribution are to be made, the distinction between the vesting of mere money legacies and of legacies chargeable upon land founded upon the presumed difference of motive above referred to, can have no place in the present enquiry. But the question would seem rather to refer itself to the rule, that if a legacy be not given by words of present bequest, but only in the direction to pay at the legatee's arrival at age, or after a certain period or event, the legacy does not vest, and is not transmissible until the time arrives, or the event happens on which it is payable. That rule is illustrated by the following cases, in which it was determined that the legacies did not vest before the time or event referred to : "I give to J. S. £200 at the age of 21 years," &c. (1 *Eq. Ca. ab.* 295,) or a bequest of "£100 a piece to the two children of J. S. at the end of ten years after my decease," (2 *Salk.* 415;) or a direction, "from and after" a particular event, to transfer stock, &c. (4 *Vesey*, 399; *Williams on Executors*, 773.)

The present bequest is in some respects analagous to these cases, and especially to the last, but being a pro-

vision for the testator's children or their descendants, it may not be within the same principle. The cases of *Ewing's heirs* vs *Handley*, (4 *Littell*, 349,) and *Boone* vs *Dyke's legatees*, (3 *Monroe*, 537,) do indeed decide that a bequest to the children of one of the testator's children after the death of their father in one case, and of their aunt in the other, (who were children of the respective testators, to whom estates for life had been given in the same will,) did not vest until the death of the devisee for life, so as to be transmissible before the happening of the event referred to. Conceding, however, that the principle of these cases, that none are entitled to take but such as come within the description when the legacy is to be paid, might in some instances disappoint the intention of the testator in favor of children who might die before the event, and that the cases might not be conclusively applicable to a bequest or devise merely to the testator's children, there can be no such objection to their application to the present bequest, which by its comprehensive terms, provides for every death which might happen before the termination of the life estate, and provides for all who could then be presumed to have any claim upon the testator's bounty.

It is impossible to conclude that the testator intended to give the legacy exclusively to his children who might be living at his death, and the descendants of such as might be dead, leaving it to pass thenceforth according to law, because he expressly directs that the descendants of any that may die afterwards, shall receive a share or shares in the division, such descendants would undoubtedly take under the will, and not by representation or as next of kin to the decedent. And as it is expressly provided that the descendants shall take the entire share to which the deceased parent would have been entitled, every other claim upon that share, except that of the descendants, if there be any, is expressly excluded, and as the testator provides not only for the death of one of his children, but for the death of any of his children, or of their descendants, still directing the division to be made between his children or

BURNSIDES' AD.
vs
WALL.

their descendants, it is clear that upon each successive death, whatever right, if any, was in the decedent under the will, was intended to pass by the will to the descendants, and not in the legal course of transmission which might exclude them. And any construction which would exclude the descendants from a share in the division, by giving it to any other representative of the deceased parent, would be a violation of the manifest and expressed intention. Suppose then that one of the testator's daughters had died leaving a husband and child, who both survived until the time when the sale and division should have been made, is not the case expressly provided for, and would not the child as a descendant and legatee, be entitled to the interest in exclusion of the husband? Or, if the testator's daughter had died leaving her husband and several children, of whom some had died, leaving others who were alive when the sale should have been made, would not these surviving descendants take under the will the entire share, to the exclusion of their father, though he might administer on the estate of his deceased children? These questions admit of an affirmative answer alone, as the only one which will allow an execution of the will according to its express words and manifest intent. And although the cases supposed are different from that which has actually happened, yet as they are directly provided for, they prohibit a construction in reference to the actual case which would defeat the will in the cases coming directly within its terms. It is certain that no one of the daughters took at the death of the testator more or less under the will than the others, or an interest in any respect differing from that of the others, and that the descendant or descendants of a daughter who had died pending the life estate, would have taken thereupon no other interest than the mother had taken. If then all the daughters did not take transmissible interests on the testator's death, none of them took such interest, and none of the descendants took such interest until the event happened on which the legacy might be beneficially enjoyed. Surely a daughter or the descendant of a daughter had no greater or

different interest by, or in consequence of her death, without leaving descendants, than if she had left children. And if as is certain, whatsoever interest a daughter had who died leaving children, terminated absolutely on her death before the event, and was not transmissible to her representative in course of law, the same is as certainly the case as to any interest of a daughter, or of the descendant of a daughter, who died before the event.

It is true, upon the intermediate death of a daughter without descendants, there will be no person to take as her descendant, the share which she might have taken if alive. But unless she had an interest different from that of the other children of the testator, the legitimate consequence would be, that as to her the legacy lapsed either for the benefit of the other legatees or for the benefit of the heirs, and as land not disposed of by the will. In either case the interest, whether in the money or the land, would not vest in the representative of the daughter, because she had no transmissible interest. And for the same reason, if the deceased daughter left a descendant who died before the event, the legacy would not vest in the representative of such decedent. Suppose in such a case, the husband of the deceased daughter and the husband of that daughter's deceased child, were both living and claiming the interest to which the wife of either, if living, would have been entitled. We perceive no ground on which it could be said that one was entitled which would not equally apply to the other, since the deceased wife of each would have had precisely the same interest. But because neither wife had an absolute interest, transmissible upon her death, to her representative, neither husband would be entitled to any share in the division, even if the share which the wife would have been entitled to, if living, be undisposed of by the will.

But as we think the true construction of the clause in question, and that which alone will effectuate the manifest intention of the testator, is that he intended the proceeds of the sale to be divided among all his children who might be living at the termination of the life

BURNSIDES' AD.
vs
WALL.

A legatee dying before the happening of the event upon which the legacy is to become vested, has no transmissible interest which a personal representative can claim.

Land to be sold and divided amongst the testator's children after the limitation of a life estate or their descendants. If

one die without descendants, before the limitation of the life estate, leaving no descendants, the interest of such an one fall to the survivors and their descendants.

estate, and the descendants of such as might then be dead, leaving descendants. Every word of the clause refers to that time. After the death, &c., of the wife, the land is to be sold by the executors and the proceeds to be equally divided between all the testator's children or their descendants, giving to the descendants the same share that the deceased parent would have been entitled to if living, not the share of the deceased parent, which might have been said if the parent had actually had a share, nor the share to which the parent had been or was entitled, but the share to which the parent would have been entitled if living, that is, if living at the time of sale. We think the testator evidently intended, and has carefully provided that the entire proceeds of the sale should be divided between all his children who might then be living, and the descendants of such as might then be dead, leaving descendants then living, giving to the descendants the share to which the deceased parent would have been entitled if living. Under this construction no one is entitled to a share, but children living at the termination of the life estate or the then living descendants of a deceased child, or the representative of such child or descendent, as was living at that time.

The word "all," used before the words "my children," adds nothing to the force or comprehensiveness of the latter words, "all my children," embraces none but children, and is only equivalent to "my children." The word all is in fact omitted in the residuary clause, in which the executors are directed to sell the personal estate not disposed of, and to divide the proceeds "among my children or their descendents as above directed." And this clause showing that the testator intended to die intestate as to no part of his property, fortified the construction by which the previous clause is understood as disposing of the entire proceeds of the land among the children living at the time referred to and the descendants of such as were then dead. And we deem it certain that the concluding clause of the will explaining the difference in the disposition of the slaves and of the other property given to his daughters,

was not intended to designate the persons who were to take the estate, but only to account for or explain the manner in which it was to be held when received. This clause, therefore, is entitled to no effect upon the present question.

Conceiving it then, to have been the clear intention of the testator, to dispose of the proceeds at the time when the sale and division are directed, and among his then living children and the descendents of such as had died, there is no room for the doctrine which seems to have been adopted in England with reference to future legacies chargeable upon land, and perhaps to contingent legacies, whether so chargeable or not, by which a mere possibility is held to be transmissible. In those cases the bequest was to a designated individual, and the contingency consisted in his living or dying before a certain period or event. Here the bequest is to a class, the individuals of which cannot be ascertained until the happening of the event referred to, and the fund being expressly distributable among the individuals then belonging to the class, to allow the transmission of the mere possibility as previously existing in any one who might have been entitled, so as to disturb the distribution among those actually answering the description of legatees at the time when the event happens, would clearly violate the intention expressed in their favor.

We are of opinion, therefore, that the complainant is not entitled to any interest in the proceeds of the land, in right of his deceased wife or child ; and as the grounds of this conclusion apply with at least as much force, to the bequest of the slaves as to that of the proceeds of the land, his claim in reference to the slaves, must also be disallowed. With regard to the small personal property bequeathed to the testator's wife for life, there seems to be no express disposition of it after her death, and we are of opinion that it is not disposed of by the residuary clause. The complainant, as survivor of his wife may, therefore, be entitled to one seventh part of the proceeds of such property—but the case not being prepared for a decree with respect to it, no direction is given in relation to it.

Wherefore, the decree is reversed and the cause re-
manded, with directions to dismiss the bill so far as it
claims an interest in the slaves and the proceeds of the
land, and for further proceedings as to the personalty.

*Caperton and Burditt* for plaintiffs; *Turner, Robert-
son and Burton* for defendant.