Chief Justice Marshall
delivered the opinion of the Court.
This case was formerly here under the name of Arnold's Heirs vs Arnold's Adm'r., &c., and the decree rendered in 1847, was reversed in an opinion reported in 8 B. Monroe, 202. From that opinion it appears that the decree then before the Court was reversed only because it gave to the widow of W. W. Arnold who had •died before his mother, dower in the home plantation in which he had by the will of his father John Arnold, only a vested remainder to take effect after the life estate devised to his mother. Some other matters were *82 noticed in which this Court approved of the decree, but all remaining questions were waived as not being finally settled by the decree, and a single suggestion was made as to the time when T. Arnold should make the election to take certain land at its value. On the return of the cause, and entry of the mandate, a decree was made to the effect that the former decree'be set aside as to the assignment of dower to the widow of W. W. Arnold, and as to the election required of T. Arnold as to which there was a modification accordant with the suggestion of this Court, and that in all other respects the former decree should stand, and the commissioner proceed as therein directed. In the decree thus reinstated, the Court had declared that W. W. Arnold was entitled to two-eighth parts of the proceeds of certain lands in Pulaski county, of which the will of John Arnold had directed a sale and a division of the proceeds among all his children, and also to two-eighth parts of the slaves which the testator had devised to his wife for life, to be divided on her death among all of his children, and the same decree further declared that these interests (one of which was decided to belong to W. W. Arnold in his own right as devisee, and the other by purchase and assignment from a devisee,) were subject to and included in the mortgage to A. Doty, the validity of which is recognized in the former opinion; and this interest of two-eighths subject to the life estate was directed to be sold for the satisfaction of the mortgage.
At a subsequent term, a decree was made, that it appearing that the Executor of John Arnold was unwilling to sell the Pulaski land, the same should be sold by the commissioner, who was also directed to sell the remainder in trust in the home plantation devised to W. W. Arnold, subject to the life estate of his mother. And at another term the commissioner having reported that he had made the sales of lands and slaves as directed, and having also reported upon the various other matters referred to him, he was by a decretal order directed to collect the proceeds of the sales made under *83 former decrees, and to “distribute the same according to-the rights and claims of the parties entitled thereto.”
A writ of error held not to be barred by a previous writ of error in the same cause, where there had been other decrees and proceedings, tho’ the same error might have been adjudicated, but were not considered or decided upon the former hearing.
The present writ of error is prosecuted for the reversal of so much of these decrees as directs a sale of the'Pulaski lands and of the slaves, for the benefit or as a part of the estate of W. W. Arnold, and for the reversal of the last decree, because in directing a distribution of the proceeds of these sales, it does not define the rights of the parties entitled thereto. The defendant in error pleads in-bar of this writ in substance, that as to a portion of the matters involved, the plaintiff prosecuted a former writ and the same was heard on the merits in this Court, and the decree was reversed as to the dower and election as above stated, and as to all other matters was not reversed, and that the opinion' of this Court was entered'as the decree of the Circuit' Court in which the cause was . redocketed, and is still pending, and that no final order or decree has been since rendered therein. The replication denies that there has been a former adjudication of this Court as to any of the matters complained of, and avers that the decrees sought to be reversed are final, and refers to the record by which the points in issue must be determined. Upon looking into the case as formerly presented, we find that one of the errors assigned questioned the propriety of decreeing that W. W. Arnold was entitled at his death to one-fourth of the slaves and 'of the Pulaski land, and in directing a sale thereof'as directed, which in fact comprises the errors now assigned with respect to the interest of W. W. Arnold in said land and slaves and with respect to the sale thereof, except that the sale of the Pulaski lands which was by the former decree directed to be made by J. Arnold’s Executor, was by the subsequent decree directed to be made by the Court’s commissioner, which is not complained-of. But it is clear that the question thus made in the case as formerly before us was not only not decided, but was not considered, and that if noticed at all it was ■then regarded as among the questions referred to as not *84 being properly before the' Court for decision, because' not finally disposed of by the decree then under revision, (8 B. Monroe, 206.) That this Court did not intend to affirm the decree as to this question is perfectly Certain. Because after noticing and deciding several' questions without noticing this, or saying any thing Which- could bear upon it, the following language is Used: “The other questions which have been made,Can not be considered5 Under the decree rendered5.-” And although it be' conceded that' the following sentence apparently intended to show why those other questions could not be considered,- applies only to so much of the decree as directs the Commissioner to ascertain and: report facts, and not to so much as settles the interest of W.-W. Arnold in certain property, and directs it to be sole} for a specific purpose, still the fact remains that, the Court did' not consider or decide upon this part of the decree, or at most that it only decided that this part of the decree was not final, and therefore not the proper subject of revision in the then existing state of the’ record.-
If it be conceded that under the general practice and' doctrines of this Court,, the decree might or even*should have been considered as final so far as it directed a sale' of the Pulaski land and two-eighths of the slaves, and determined the interest of W. W. Arnold in the proceeds, and that the question involved was therefore sufficiently presented for the'consideration of this Court,it Would1 not follow and cannot be admitted that the party is forever afterwards precluded froto making the satoe question,- when the' Court did not in fact decide it, but either' intentionally or inadvertently waived it as not being properly presented by the decree. The utmost effect that can in justice be given to this waivor' to the decision as to the nature of the decree upon* which it is supposed to have been founded, is that the*party is precluded from making the same question upon the same state of the record, and until the matters supposed to have been interlocutory only in the first decree *85 aré finally carried out and' acted on- by the Court. Then although the plaintiff in error could not have' prosecuted his second writ to reverse for the causes' now under notice the former decree as re-entered un-der the mandate of tfois Court,- because so far as it was' not disapproved by this Court, the Circuit Court had a right to carry out its principles, yet when these princi-pies were afterwards carried out and finally settled by an order or decree of that Court, it was competent for the complaining party to prosecute his writ for the reversal of such final ordér or decree, and in doing so, to question all the principles involved in it, and not decided on by the former opinion.- And especially- those" principles of which the consideration- had been waived' upon the former writ because they were not- carried’ out and were supposed not to be finally .settled by the1, first decree.
The question whether the plaintiff has a right1 to prosecute his present, writ upon the alleged errors- in the' first decree is thus resolved into the enquiry whether the' principles and direction now complained of as- errors’ in that decree, have been carried out and established by a final decree. If they have been, they enter into’ and1 form a part of the final decree itself, and if they are in* fact erroneous, they are proper grounds for reversing,' that decree. Is there then any final decree establishing the principles complained of in the first decree? We think the decree directing the commissioner to collect and distribute the proceeds of the sales which he-had made under the former decrees, is of that character. It in effect confirms the sales referred to, and it appropriates the proceeds, by the direction that thecommissioner collect and distribute them. And although that direction be erroneous in not directing to-whom and in what proportions the distribution is to be-made, it-is nevertheless a final disposition of the proceeds so far as the Court is concerned, and must be regarded as directing a distribution among the parties entitled according to the principles and rights declared in* *86 the former decree under which the sales were made and the proceeds were to become due and collectable. And as the former decree had defined the interest of W. W Arnold in the proceeds of the Pulaski lands and in the slaves, and had declared those interests to be included in and subject to the mortgage to Doty, and had'directed the sale of this interest in the slaves expressly, and of the interest in the Pulaski lands impliedly, for the satisfaction of the mortgage, the direction to distribute the proceeds of those sales must be regarded as directing their appropriation to the satisfaction of the mortgage, and as thus carrying out and ■establishing finally the rights as previously declared, and the principles of the former decree now brought in question.
Clauses in llie "will to be construed.
We are of opinion therefore, that the present writ of error is not barred by the former proceedings? in this Court, and that not only the form of the last decree, but the principles which it effectuates as embodied in the decrees authorizing the sales, may now be questioned as it is done by the present assignment of errors. The plea is thefore overruled.
The main questions now made are, 1st, whether under the will of John Arnold, his son W. W. Arnold having died before his mother, had any vested or transmissible interest in the slaves. And 2d, whether ho had any such interest in the Pulaski lands. A third as■signment of error questions the last decree rendered on account of its omission to define the rights according to which the commissioner is directed to make distribution. The two first questions above stated, arise under the second and the last clauses in the will of John Arnold, which are as follows:
“I will and devise to my wife, the use of the plantation upon which I reside, during her life, to be under ■the management and control of my son Wm. Willis Arnold, upon the terms and conditions already expressed and set forth, together with all the negroes (except Mary,) being fifteen in number, also all the stock oí *87 every description now on hand; all the farming utensils, and all the household and kitchen furniture.. I wish it expressly declared and understood, there is to be no sale of my property immediately after my death, unless I should outlive my wife. After the death of both of us, it is my wdsh that my executors shall sell the whole of my personal estate upon such terms as they may think proper at public sale, and the proceeds of the same aré to- be divided amongst all my children. My negroes are not to be sold. They are to be divided, together with their increase, according to some equitable mode, equally among all my children. Knowing my wife will take the best possible care of my young negroes as long as she lives, I have thought it best they should not be separated until the period already designated.”
At the end of the will is the following: “I hold two tracts of land in the county of Pulaski, of two hundred acres each, which I wish my executors to sell, and the proceeds of the sale to be equally divided with my children.”
It is contended that under these clauses, the, testator^ children took no vested interest in the negroes until the death of his wife when they were to be divided, nor in the proceeds of the Pulaski land until a sale should be made as directed; that no person could claim the benefit of these devises but such as would come under the description of children at the time when the division was directed to be made, and that W. W. Arnold having died before either the negroes or the proceeds of the land were to be divided according to the ¡terms of the will, he had no transmissible or disposable interest, and therefore nothing passed either to the mortgagee by the mortgage, or to his administrator by his death. The principle contended -for, is that there-being no gift of the negroes, or of the proceeds of the land but in the direction to divide them among the children, which was to be done on the happening of future events, the division must be made among those *88 who constitute the class on the happening of those events respectively, and thast-as no others can take, any one of the children, who though living at the testator’s death dies before the event on which the division is to be made., takes nothing, and can transmit <or dispose of nothing.
Land directed to be sold and the proceeds divided between testator’s children: Held that it was to be considered as converted from the death of testator •and the proceeds •vested in the children.
This argument, if correct in its general terms and .application, is not alike applicable to each of the two legacies in .question, which not only differ in their terms and subjects, but also in the nature of the events in which the direction to divide depends in each. The event on which the slaves might be divisible., that is, the death of the testator’s widow, was uncertain as to the time of its happening and might be remote. It was not within the control of the testator, and though contemplated as an event certainly to happen, was not contemplated as to happen within any particular period.
The sale of the land being directed absolutely, became a positive duty of the executor, to be performed immediately in reasonable time, and was so contemplated and intended by the testator. Even the enjoyment of the legacy is not postponed longer than until the executors could conveniently make the sale, and therefore such a legacy is presumably intended to vest immediately on the death of the testator, and will so vest unless there be something to show a contrary intention. The executor cannot by procrastinating his duty of making the sale, defeat or impair the bequest. That which ought to have been done, is considered as having been done. The direction to sell being absolute without limitation as to time, the land is regarded in equity as converted into money from the death of the testator, or at any rate from such short period after-wards as might be requisite for its actual conversion. And the rights of the parties are settled accordingly. W. W. Arnold having survived his father for some five or more years, became certainly entitled to this legacy. And he and his co-heirs might at any time before he *89 'disposed of his interest, have elected - to take the'land instead of the money, and thus -prevent a sale-byJthe -executors, until a sale of the land was in the heirs by ■descent. We think there is no doubt as to this legacy having vested in W. W. Arnold, and having been prop.erlymade subject to'the mortgage.
A devise to the testatov’s widow of his farm during her life, together with all the negroes except Mary, being fifteen in number: also all the stock of every description now, on hand, and after the death of the widow it is said: “My negroes are not to be sold, they are to be divided, together with their increase, according to some equitable mode, equally among all my children:” Held that each of the testator’s children took a vested interest at his death subject to be enjoyed after the death of their mother.
With regard to the slaves, the question is not free ■from embarrassment, by reason of conflicting authorities, and nice and not altogether consistent distinctions, which have been applied to the construction of differ-ent wills almost identical in 'language. But we are of •opinion that the clauses relating to the slaves should be -construed as giving to the testator’s children living at his death, a vested remainder to take effect in possession after the death of liis wife. A different construction of such a-devise, would doubtless defeat the real intention in every case in which one of the testator’s •children living at his death,should happen to die leaving children before a division could be made, since the -effect would be to deprive these grand-children of all interest in the legacy, and give the whole to the surviving children of the testator. A husband and father devising his estate, or a considerable portion of it, to 'his wife for life, and at her death to be divided equally ■among his-children, or among all his children,' should be presumed to have intended to provide equally and alike for each of his children. In such a case it would be evident (nothing more appearing,) that the enjoyment of the property by the children was postponed not on account of any consideration affecting them per-' sonally, but on account of the life estate. And that construction consistent with the rights of the devisee for life, which would be most beneficial to each of the children, and give an equal benefit to each, would most probably meet the actual intention of the testator. In the will before us, the testator by the reason given for keeping the slaves together during the life of his wife, seems to intimate a present or immediate interest in his children after his death, subject to the life estate giv *90 en to his wife. But waiving this inference and. any that might be drawn fi'om the fact that the clause directing that the negroes are to be divided equally among all his children, makes no express reference to the death of the wife or any other pex’iod or event as fixing the time for the division, and taking the entire clause as it substantially is, as a devise of the slaves to the wife for life, and on her death to be equally divided among all the testator’s childi’en, we do not perceive why this should or can be regarded as any thing more or less than a devise to his wife fox-' life, and on her death to the testator’s children equally. Nor do we perceive why this should not be understood as giving a vested remainder to the childi’en.
We are referred to the cases of Ewing's Heirs vs Handby, (4 Litt. 349,) Boone vs Dykes, (3 Mon. 537.) Burnsides vs Wall, (9 B. Mon. 318,) as supporting the construction contended for by the plaintiff in error. But upon examination of these cases, we are of opinion that they do no apply authoritatively, and certainly not conclusively to the present question. In neither of the two fii’st cases was the devise in remainder to the testator’s children. And in the third case it is conceded that they should not apply conclusively to a devise to the testator’s children. Besides, the will in the first case seems to have been very special. The ultimate devise depended not merely upon the death of the devisee for life which was certain, but upon her death without children to' whom if there should be any, the slaves were devised. The devise over for want of children of the devisee for life, being to the children of her sister, the Court said that the testator could not mean the children of this sister living at his own death, and that he intended to designate the children living at the death of the devisee for life, which of course excluded one who had previously died.
In. the case of Boone vs Dykes, the devise was as follows : “I lend the rest of my estate to my children, E. J., &o,, during their natural lives, to be equally divided *91 among them share and share alike, then to return to their children equally divided forever.” It does not appear in the opinion rendered whether the devisee for life whose children were claiming (slaves) against his alienee, or whether any of the devisees for life had any children at the death of the testator. And the Court decided that the remainder was contingent and subject to be defeated by the alienation of the devisee for life* because it was limited to take effect to dubious and uncertain persons, it being uncertain who would compose the class or body of children of the devisee for life, on the termination of the particular estate. But we understand the principle to be now well settled that in case of a devise to A for life, remainder to the children of A or of B, although it be uncertain who may come under the description when the particular estate shall determine, the remainder vests in such children of A or B as are in esse at the death of the testator, and opens for the admission of others who may be born during the continuance of the particular estate, and if any die during that period his or her interest if not disposed of is transmissable according to the nature of the property. This rule is expressly laid down in Williams on Executors, p. 720, where the case of Doe vs Prigg, 1 B. & C. 231 is stated, in which there was a devise to A for life, remainder to the “surviving children of W. J. and J. W. and their heirs forever, the rents and profits to be divided between them in equal portions share and share alike,” and the Court of King’s Bench held that the word surviving referred to the testator’s death, and not to that of the tenant for life, and that the shares of children who died after the testator and before the tenant for life were vested and descendible. Whether the decision would have been different if the word ‘surviving’ had not been used, we cannot say, as we have not a full report of the case before us. But we suppose the construction referring that word to the death of the testator, indicates and was founded upon the "general rule in favor of. the interest being vested. The *92 general rule as above stated, is however, establish-ed by other cases in which no such word occurs, as in the case of Miller vs Macomb, (26 Wendell 229,) and cases there cited; Turner vs Patterson, (5 Dana, 296,) which has been followed by other cases in this Court. In the case last cited, in which numerous authorities are referred to, the Court after construing the devise to be to C P during her life remainder to her children, each an equal part, goes on to say, that “upon the- testators death this remainder vested eo instanter in the children then living, because there is nothing in the will indicating a- different intention? and because the law does not favor such a- construction as will make a devise executory or contingent. And persons able to take a vested remainder were in existence when the life estate commenced,” and the remaining part of the rule above . stated is also expressly la-id down.
Boone v Dykes not approved but regarded as overruled: (26 Wendell, 289; 6 Dana, 296; Wms. on Ez’rs., 772-776.)
*92 These cases, to which others might be added, apply to real estate, and it is upon the doctrine of remainders in real- estate* that the Court founds its decision in Boone v Dykes. But the rule is laid down by Williams (supra,) as applying to legacies; and at page 776, hestates the doctrine that, -where money or other personalty is devised to one for life and-after his decease to another, the interest of the second legatee is vested, and transmissible on his death in the lifetime of the first legatee. The case of Jackson’s adm’rs vs Sublett, (10 B. Mon. 467,) applies the same principle to a devise of slaves to the testator’s wife for life, and at her death to be equally divided between his daughters' by name. And in the case of Bowling’s representatives vs Dobyns (5 Dana,) it is applied to a case where the ultimate devise after the life estate is in the words “to be equally divided between my two .children S and N.” Though- these two cases differ from the present one in the fact that the ultimate devise to the testator’s children goes on to name them-, the reasoning of the Court and the authorities cited have an important bearing on the question now in hand, and especially in showing the nature of a remainder, *93 and that though the ultimate devise may consist only in the words “to be equally divided” after the death of the devisee for life, they suffice to give a present vested interest.
When á testator directs property to be divided amongst his children at the death of his wife, to whom he gives a-life estate', it is-understood' as a-' devise to each of an equal part, <ir the devise to beeonstruedastho' each child had> been named,-
And we think that where a testator directs his property to be divided among all his children at the death of his wife to whom he has given it for life, he intends to devise to each an equal part, and the devise should have the same effect as if he had named them. If he intended to discriminate between them, he would naturally name or classify those for whom he was making provision. But when he gives to all equally, it would not occur to an ordinary mind that it was necessary or even proper to name them, because each is already sufficiently designated.
The rule that in devises to children as a class, all persons may take who fill the description at the time of distribution, is laid down in the elementary works in the affirmative, and is so quoted from Roper on legacies in the case of Ewing’s heirs vs Handby supra. And where an interest in remainder is thus devised,the principle contained in the negative form of the' rule, that is, that none but such as come under the description at the time for distribution are entitled, is expressly contradicted by the rule as stated by Williams, and by the cases above cited in support of the position that such devises create vested interests if,' and as soon as, during the life estate there are persons in esse capable of taking the remainder. We refer also to the case-of Shattuck vs Stedman, &c., (2 Pickering 468,) as a case relating to personal estate, and directly analagous to the present. In that case the testator gave to his neic-e the interest of a certain sum during her life, and at her decease the principal sum to be divided among her children, and payable to them at their respective ages of twenty-one years with interest. And it was held that the legacy to the children did not depend upon their surviving their mother, but that it vested in them upon the death of the testator.
Distinguished from the ease of Burnsides vs Wall: (8 B. Mon roc.)
Decrees for distribution should define the am’t to which each distributee or creditor is to have of the distributable fund.
The case of Burnsides vs Wall, (8 B. Mon.,) turned, as will be seen from the opinion, upon the effect given to a particular feature in the devise, by which the testator provided not only for his children, but for the death of such of them as should die before the death of his wife, when the slaves were directed to be divided. The Court considered this provision as taking the case out of the operation of the principles assumed in this opinion, and most of which were conceded in that, and as showing that the testator intended that the division should be made, at all events among his children or their descendants living at the time fixed for the distribution, and thus excluded all who did not come up to that description at that time. The opinion in that case rather concedes and certainly does not deny that if the division had been directed between the children only, they would have taken a vested interest at the death of the testator. And in page 321, it is expressly said: “If the will had simply directed the land (after the limitation of the life estate) to be divided among his (testator’s) children, Mrs. Wall as one of his children living at his death, would have had a vested remainder in one undivided seventh,” which is precisely the construction applied in this'opinion to asimilar devise of slaves.
We conclude therefore, upon the ground of authority as well of reason and principle, that this will give to the testator’s children a vested interest in remainder in the slaves devised to his wife for life. And there was no error in the decree in carrying out this construction by the sale of W. W. Arnold’s interest of two-eighths for the satisfaction of his mortgage debt.
But this bill was filed by the administrator of W. W. Arnold against his widow, heirs, and creditors, alleging the insufficiency of the estate to pay its debts, and praying for a sale of lands, &c., and for a general settlement. There were other debts besides the mortgage debt above referred to, and property not included in the mortgage was sold. The commissioners reported these sales and also a statement of the debts preferred *95 and unpreferred, but leaving the amount of some of them dependent upon a question referred to .the Court. In this state of the case and without any direct action on the report approving or disapproving it, or deciding the questions referred; the decree was rendered directing a distribution of the proceeds of the sale among the parties entitled. The decree if intended to confirm the commissioners report should have referred to it, and directed distribution accordingly. But it makes no such reference, and besides, the report itself did not ascertain all the rights to which it refers. The amount of some of the claims reported as entitled to preference is not fixed. And if it might be assumed that the claims reported as preferred were to be first paid, there is no rule laid down for the apportionment of the residue of the fund among the other claims. We think the decree leaves too much to the discretion of the commissioner, and that it is erroneous in not defining either expressly or by .reference the rights of the parties entitled to distribution.
Burton for plaintiff; Turner for defendant.
The plaintiff in error is not only personally a creditor, but as Executor holds a preferred claim. He is therefore interested in having the rights of the parties properly ascertained, and the fund properly distributed, and is entitled to reverse the decree for its omissions in these particulars. He was also entitled to make the ■other questions which have been disposed of, because he was the Executor of John Arnold as well as one of his devisees, and in both characters interested in the question whether the deceased devisee had such interest as passed by his mortgage.
Wherefore the decree directing the commissioner to distribute the proceeds of the sales referred to, is reversed, and the cause is remanded for further proceedings and decree upon the report. But in other respects the last and preceding decrees are left undisturbed. And the plaintiff in error is allowed one half of his costs in this Court.