CASE 31—EQUITY—JANUARY 12.

# Cooley, Etc. v. Black, Etc.

### APPEAL FROM KNOX CIRCUIT COURT.

LIENS—PRIORITY—VENDOR'S AND MECHANIC'S.—Buildings erected upon land subject to a vendor's lien become immediately subject to the lien, and the vendor's lien upon the entire property has priority over a mechanic's and materialman's lien asserted against such building.

JOHN T. HAYS, FOR APPELLANT, COOLEY.

1. The judgment below was wrong in adjudging to Black a lien superior to that of Cooley upon the hotel and lot for material furnished and labor done. Gen. St., Chap. 70, Art. 1, Secs. 1, 2, 3, 9 and 14; Trustees Caldwell Institute v. Young, 2 Duv., 582; Nazareth, &c. Inst. v. Lowe, &c., 1 B. M., 257; Foushee, &c. v. Grigsby, &c., 12 Bush, 75; Brown v. Story's Admr., 4 Met., 316.

2. The action was prematurely submitted. Civil Code, Sec. 164; and the judge had no power to enter judgment after the term had closed. Bennett v. Tierney, &c., 78 Ky., 580; Raymond, &c. v. Smith, &c., 1 Met., 65; Johnson v. Com., 80 Ky., 377.

3. The court erred in adjudging the Woodworking Company a lien of equal dignity with Cooley's.

DISHMAN & HAYS FOR WOOD WORKING COMPANY.

The lien of the Wood Working Company was never lost or waived and was superior to that of the vendor upon the buildings erected. Gen. Stat., Chap. 70, Art. 1, Secs. 1, 6, 8, 9, 10, 11 and 13.

JAMES D. BLACK, FOR APPELLEE.

1. The claim of the Wood Working Company was lost by failure to assert it within the statutory period.

2. The appellants failed to comply with the mechanics' lien law in force when their asserted claim originated. Cooley's claim was not filed in the county clerk's office; but if it has been it is fatally defective in failing to show the "just credits and sets-off

known to him." The Wood Working Company did not sue to assert its claim within a year.

3. The vendor's lien was superior to the mechanic's and material-man's upon the entire property. Phillips on Mechanics' Liens, Secs. 1, 2, 3, 9, 10, 11, 15, 232, 243, 247, 249, 237, (3d ed.); Am. & Eng. Ency. of Law, vol. 23, p. 851; Cook, Stock and Stockholders, vol. 2, Secs. 708, 709, 712 (3d. ed.) The cases cited by counsel for appellant construe the old law and not that in force when the asserted rights herein accrued. See further, Am. & Eng. Ency. of Law, vol. 15, p. 10; Fetter, &c. v. Wilson, &c., 12 B. M., 90; Rees v. Jared, 77 Am. Dec., 88; Gillespie v. Brad-ford, 27 Am. Dec., 494; Briscoe v. Bronaugh, 46 Am. Dec., 108; Rees v. Ludington, 80 Am. Dec., 741; Louisville Building Assn. v. Korb, &c., 79 Ky., 190; Jones v. Jeffress, 11 Bush, 636; Rob-erts v. Riggs, &c., 8 Ky. Law Rep., 247; Foushee v. Grigsby, &c., 12 Bush, 75; 2 Story Eq. Jur., 1217-1218; Pomeroy Eq. Jur., (2d ed.) Secs. 625, 730; Gen. Stat., Chap. 70, Sec. 1, Art. 10.

4. Cooley, being a party to the consolidated actions, is bound by the steps taken in them; Tharp & Burke, &c. v. Cotton's Exrs., &c., 7 B. M., 636.

5. The submission was not premature.

S. B. DISHMAN FOR APPELLANT IN A PETITION FOR A REHEARING. (TINSLEY & FAULKNER, J. SMITH HAYES AND JOHN T. HAYES, OF COUNSEL.)

The appellee by his conduct subsequently to the sale to the Barbourville Land and Improvement Company, estopped him-self to assert his vendor's lien on anything else than the land.

JAMES D. BLACK FOR APPELLEE, FILED A REPLY TO THE PETITION FOR A REHEARING.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

This action arose under section 1, art. 1, c. 70, Gen. Stat., which reads as follows: "A person who performs labor, or furnishes materials in the erection, altering, or repair-ing a house, building, or other structure, or for any fixture or machinery therein, or for the excavation of cellars, cisterns, vaults, wells, or for the improvement, in any man-ner, of real estate by contract with or by the written con-

sent of the owner, shall have a lien thereon and upon the
land upon which such improvements may have been made,
or on any interest such owner has in the same, to secure
the amount thereof, with costs." The facts may be stated
as follows: In February, 1890, the appellee, Black, sold
to the Barbourville Land & Improvement Company, a cor-
poration, a tract of land containing over 70 acres, and by
deed conveyed it to the corporation, in which a lien was
reserved for the unpaid purchase money. This deed was
duly placed upon record. The improvement company sub-
divided the land into streets and alleys and town lots,
and shortly thereafter (1890) contracted with the appellant
Cooley to erect the foundation and build the chimneys
for an hotel on certain lots embraced in the subdivision,
and contracted with the Barbourville Wood-Working
Manufacturing Company to furnish material and perform
labor necessary to complete the building. The appellants
claim that they have a superior lien upon the *building*
which was erected upon the lots to that of Black. It is
conceded by the appellants that Black has a superior lien up-
on the *lots* upon which the building was erected. The court
below decided that the vendor's lien was superior to that
of the appellants on the entire property. Counsel for the
appellants seem to think that, under the section of the
statute quoted, mechanics are given a superior lien on
any house which they may erect, but the vendor has a
superior lien upon the land. It is difficult to understand
how such a claim can be made, in view of the fact that
the statute gives a lien to a person who performs labor
or furnishes material in the erection of a building upon
it and the land upon which it is erected. There is nothing
in the language employed in the statute to show that the
lien upon the building is to be of greater dignity than

that upon the land upon which the improvements may have been made. . The Legislature supposed that a case might exist where a contract might be made with one who might not own the entire interest in the land, and therefore it declared the lien should be on any interest the owner had in the same. The statute is inartificially drawn, but it results from the fact that the first mechanic's lien law was enacted in 1831, which gave a lien alone upon the building, and the act of 1834, which was amendatory thereof, included the land upon which it was erected.

When the material used was placed in the building it became part of the realty. It no longer retained its character of personalty. Such labor as was done to make this conversion contributed to that end, and the character of this labor could not change the nature which the property assumed after it had been so converted. At the moment the material was placed in the building the title to it vested in the owner, subject to such liens as by law existed on the freehold. The improvement made is part of the freehold. It is hardly necessary to observe that when a lien is created upon the realty it embraces all permanent improvements thereafter placed upon it. It is contended that a lien attached in favor of the contractors the instant material was placed in the building, and therefore it is argued that the contractors have a lien superior to that of the vendor on the building, but one inferior to his on the lots upon which it is erected. It is true that contractors, who erect a building under a contract with the owner of the soil, have a lien upon the building and the soil; not two distinct liens, a first lien upon the building and a subordinate one on the soil, but a lien upon the entirety,—the land in its improved condition.

The question in this case is, did the Legislature intend

to give mechanics and material men liens superior to that held by a vendor at the time they furnished material or performed labor in the erection of the building? The General Assembly could, as it did, say that the man who performs labor or furnishes material in the erection of a building has a lien upon it and upon the land upon which it stands. This lien, however, can exist notwithstanding a vendor had a lien upon the real estate at the time the improvement was made. The declaration that a lien attaches in favor of the laborer or material man does not indicate that the improvements made on the land are not to assume the nature of realty, and that the vendor's lien was not to continue to exist thereon in the same manner as it would have done before the enactment of the mechanic's lien law. Before we could hold that the law-making power intended that the laborer or contractor was to have a lien superior to that of a vendor, some language would have to be used which clearly manifested that purpose.

Phillips, on Mechanics' Liens, Sec. 237, says: "Does a prior mortgage on land, which is subsequently improved by buildings, extend its lien over the latter, to the exclusion of mechanics who erected them? In answer it has been said that the lien created by the statute does not and can not interfere with the prior incumbrance created by mortgage upon the land on which the building is erected. It is equally clear, upon the principles of the common law, and independent of any statutory provision, that any building or improvement erected upon land subsequent to the execution of the mortgage, becomes a part of the land, and subject to the existing incumbrance. And it may be safely affirmed that a mortgagee can not be deprived of the benefit derived from subsequent improvement, except by

clear and express legislative provision. In case of doubt, his acknowledged common-law right would prevail."

It is insisted that because the act of 1834 contained a proviso that the act should not be *construed* to affect or impair liens, etc., on the property, and as this proviso was not carried into the law as found in the General Statutes, therefore the Legislature manifested an intention to make a mechanic's lien superior to all liens existing at the time the mechanic's lien attached. If this reasoning be sound, then the mechanic's lien would be superior to the existing liens on the land as well as the building erected thereon. The General Assembly did not know, what construction parties and the courts might place on the act of 1834; hence gave a rule of interpretation. This court construed the act of 1834 in Orr v. Batterton, 14 B. Mon., 82, and said: "Now, there can be no doubt that, independent of the law which gives a lien to the mechanic, the property, in its improved condition, if the vendee had made any improvements upon it, was subject to the vendor's lien. It follows, therefore, as an inevitable consequence, as this law does not affect or injure the lien of the vendor, that it has to be first satisfied, and the lien on the property given to the mechanic is entirely subordinate to it."

The court recognized that the General Assembly did not intend to injure or impair liens existing at the time the labor was performed or material furnished in the erection of a building, and, independently of the purpose to do so, such liens would not injure such pre-existing liens.

The General Assembly, in view of that decision and through the exercise of its knowledge as to the rules of interpretation of statutes, deemed it unnecessary to prescribe a rule for construing subsequent acts giving liens to mechanics for labor performed and material furnished, etc.

So far as we are aware, no case has arisen since Orr v. Batterton, until this one, except under a special statute, in which it was claimed that the General Assembly intended to give laborers and material men a lien superior to that of a vendor. For the courts to have given the statute the construction which appellants claim is the proper one, would have produced great complications in the settlement of conflicting claims; hence much litigation. Indeed, such a construction would have interfered with the sale of land, especially lots in cities and towns. Besides, it would have deterred people from loaning money to, and taking mortgages from, persons who desired to build houses or engage in business enterprises.

As the record of the county court showed appellee's lien existed, the appellants were charged with notice thereof. With that knowledge, they chose to risk the expenditure necessary to perform their contracts, and they can not now complain that the result is a hardship upon them.

The views we have expressed render it unnecessary to write anything with reference to our conclusions on the other questions discussed by counsel. The judgment is affirmed.

(Judge Guffy dissented).