## Turner v. Randolph, et al.

(Decided February 12, 1926.)

### Appeal from Henderson Circuit Court.

1. Vendor and Purchaser—Employee's Lien for Wages Due Within Six Months Before Property Distributed to Creditors Superior to Vendor's Lien on Real Property of Employer.—Employee's lien,

under Ky..Stats., section 2487, 2488, for wages due from mining corporation within six months before distribution of property or effects of Corporation among its creditors as set forth in statute, held superior to vendor's lien on the real property of the corporation.

2.  Constitutional Law—Master and Servant—Granting Superiority to Employees, in Lien for Wages, Over Vendor's Lien, Held Not to Impair Obligation of Contract.—Granting superiority to employee's liens for wages due within six months before distribution of property or effects of corporation among creditors over vendor's lien on corporation's real property, held not to impair obligation of contract; vendor presumably knowing of existence of Ky. Stats., section 2487, 2488, granting employee's lien at time he accepted vendor's lien as security for balance of purchase money, and also knowing that coal company contemplated operation necessitating employment of large number of laborers to whom it might become indebted.

JOHN C. WORSHAM for appellant.

HENSON & TAYLOR for appellee.

OPINION OF THE COURT, BY TURNER, COMMISSIONER—Affirming.

The sole question presented on this appeal is whether the statutory lien given to employees of mining and other corporations for wages coming due to such employees within six months before the property or effects of the mining corporation shall come to be distributed among its creditors as set forth in the statute, is superior to a vendor's lien on the real property of the mining corporation.

The question arises in this way: In July, 1921, appellant conveyed a coal mine to the Kentucky Diamond Coal Company, a corporation, for the consideration of $125,-000.00. $55,000.00 of the consideration was at the time paid by issuing to him that amount of stock in the coal company, and the remaining $70,000.00 of the consideration was secured by notes payable in the future, and for which a vendor's lien was retained in the conveyance.

The coal company took possession of the property and proceeded to operate the same as a coal mine until May, 1923, when it ceased operations, leaving unpaid considerable sums to its employees which had become due within the six months before the suspension. Accordingly in July, 1923, appellees, all employees of the coal company, filed their suit against that company for labor

and services due within six months, and asserting their statutory lien. The employees claimed a lien on the property superior to the purchase money lien of appellant, who was made a party defendant and called upon to set up his claim. Appellant thereafter filed his equitable action seeking an enforcement of his vendor's lien, and the two actions were consolidated.

The court adjudged the employees a lien superior to that of appellant, and the correctness of that ruling is the only question involved.

The sections of the statute involved are 2487 and 2488, and they provide:

Section 2487. "When the property or effects of any mine . . . shall in any wise come to be distributed among creditors, whether by operation of law or by the act of such company, owner or operator in such business, the employees of such owner or operator in such business shall have a lien upon so much of such property and effects as may have been involved in such business and all the accessories connected therewith, including the interest of such company, owner or operator in the real estate used in carrying on such business. . . . "

Section 2488. "The said lien shall be superior to the lien of any mortgage or other incumbrance thereafter created, and shall be for the whole amount due such employees, as such . . . ; that for wages coming due to employees within six months before the property or effects shall in any wise come to be distributed among creditors as provided in section 2487, the lien of such employees shall be superior to the lien of any mortgage or other incumbrance theretofore or thereafter created. . . . "

The argument for appellant is not based upon any interpretation of the statute, for its terms are too plain, explicit and unambiguous to admit of any doubt as to its meaning. The statute is based upon a well recognized policy which is written into the statutes of many states and of the federal government, and that is to protect the wage earner in many forms of public endeavor who is necessarily dependent upon his daily labor for the sustenance and support of himself and family, and particularly in such forms as are recognized to be primarily for the public good. Obviously if the average day laborer can be deprived, by the misfortune of his employer, of

his wages for the last six months prior to such misfortune, his family will almost of necessity suffer, and he himself in many instances deprived of the necessities of life, and thereby rendered unfit to give further service to the public.

As said by the Supreme Court of the United States in Guaranty Title and Trust Co. v. Title Guaranty and Surety Co., 224 U. S. 152, in considering an act of Congress giving preference for wages to laborers.

"The policy which dictated it was beneficent and well might induce a postponement of the claims, even of the sovereign, in favor of those who necessarily depended upon their daily labor."

And the federal district court of Georgia in the case of In Re Erie Lumber Co., 150 Fed. 823, in upholding a similar statute of the state of Georgia, said:

"The protection of the wages of labor is a primary duty of society and of government. The wage earner constitutes an immense proportion of those who labor for the common welfare. So long as he remains healthful and self-sustaining, every prosperous result follows. In those unhappy epochs when the individual laborer is helpless, he and those dependent upon him become a charge upon the public. When labor *en masse* becomes helpless, when it is no longer possible to earn the means of subsistence, government itself is threatened, and revolution has often followed. It is therefore profoundly and philosophically true that it is the duty of government in every contingency to secure his earnings to the wage earner. This truth is at the basis of those laws which attempt to accomplish the result upon which the existence of orderly society may itself depend. National and state legislation sedulously attempt to accomplish this and otherwise to ameliorate the condition of the laboring man. The courts with equal solicitude strive to attain the same end."

In upholding and construing a similar statute in the state of Massachusetts the supreme court of that state, through Chief Justice Shaw, in Thayer v. Mann, 2 Cush. 371, said:

"We think the policy of the statute was to secure to a class of ever needy and efficient laborers,

who are very dependent and meritorious, but who have little means of knowing the credit of their employers, the small amount due them for very recent services."

Not only so, we have in this state the precise statute, at least inferentially upheld and enforced in the case of Producers' Coal Co. v. Barnaby, 210 Ky. 244.

There is no question of the impairment of the obligations of a contract, for the statute invoked by the employees was in existence at the time appellant accepted his vendor's lien as security for the balance of his purchase money, and he not only presumably knew of the existence of the statute, he also knew the coal company contemplated an operation which would necessitate the employment of a large number of laborers to whom it might become indebted.

But appellant relies upon three opinions of this court, to-wit: Northern Bank v. Deckebach, 83 Ky. 154; Cooley v. Black, 105 Ky. 267, and Sandy Land and Development Co. v. Brown, 175 Ky. 219.

In the first named case certain supply men were asserting priority over a vendor's lien under a statute giving them a lien superior to any mortgage or other incumbrance theretofore or thereafter created; but the holder of the vendor's lien had first asserted his lien, and had acquired a *lis pendens* lien upon the property which the plaintiff had sold, and such *lis pendens* lien was given priority over subsequent attaching creditors who were the supply men, notwithstanding such statute. In that case there was no assignment for the benefit of creditors, nor was there any court proceeding pending to settle up in any way the estate of the debtor, and in this situation priority was given to the vendor's lien because he had asserted his lien and acquired a *lis pendens* status before the supply men undertook to assert their statutory lien.

In the case of Cooley v. Black, the vendor's lien was upheld against a materialman's lien which was asserted under a statute merely giving him a lien upon the land upon which improvements had been made, but did not expressly give him a lien superior to any incumbrance theretofore existing.

In the case of Sandy Land Development Company a vendor's lien was upheld against a lien for labor and material furnished in the construction of a concrete sidewalk; but the labor and materialman in asserting his

lien proceeded under the provisions of section 2463, Ky. Stats., wherein is merely given a lien upon the owner's property, or his interest therein, and did not proceed under the provisions of the charter for cities of the fifth class where the work was done, wherein there was given to him a lien which would have been superior to all other liens. This is specifically pointed out in the opinion of the court, and the vendor's lien given superiority only because the statutory lienor had failed to proceed under the proper statute.

It is clear that none of the three cases cited, when analyzed and understood, are inconsistent with giving to the employees the preference in this case over the vendor's lien.

The policy of the statute is well recognized, its wisdom is not called in question, and its interpretation is not in doubt.

Judgment affirmed.