## CITY OF BRUNSWICK v. GORDON REALTY COMPANY.

1. Section 11 of the act approved August 22, 1905 (Acts 1905, p. 680), amending the charter of the City of Brunswick, strictly construed and considered in connection with the general law as embodied in the Civil Code (1910), §§ 869, 3329, 3333, authorizes the municipality, under stated conditions, to pave designated streets at the expense of owners having abutting lots which they return for city taxation, and provides for a lien against such property owner and the abutting lots for the proportionate cost of the improvements, which has the dignity of a lien for municipal taxes generally, and superior to a lien of a pre-existing duly recorded mortgage.
2. On the trial of the case upon an agreed statement of facts, the judge acting by consent without a jury, erred in finding the property not subject to the execution issued by the municipality for the costs of the paving.

No. 5361.    FEBRUARY 15, 1927.

Claim. Before Judge Highsmith. Glynn superior court. January 29, 1926.

A transaction occurred in 1918, whereby certain land lots in the City of Brunswick were conveyed by the "Habersham Park Land Company," a corporation, to the "American Shipbuilding Company," a corporation, and the latter company executed a mortgage to the former company to secure certain purchase-money notes. The mortgage was duly recorded. On March 10, 1919, the American Shipbuilding Company conveyed the land to the "American Holmes [Home?] Corporation" and the deed was duly recorded April 16, 1919. Thereafter the property was returned for city taxation in the name of said American Home Corporation. On August 6, 1919, an ordinance was passed for paving certain streets, including Albemarle Street on which certain of the lots abutted. On March 24, 1920, a fi. fa. was issued by the city officers against the American Home Corporation for a stated amount as representing a part of the costs of paving. The fi. fa., omitting the formal parts, was as follows:

"Whereas, under authority of the Mayor and Council of the City of Brunswick and according to the law in such cases made and provided, after due notice given to the American Home Corporation as the owner of that certain lot of land in said city, known and designated, according to the map of said city and the

<hr/>

Municipal Corporations, 28 Cyc. p. 1102, n. 8, 10, 14; p. 1109, n. 77; p. 1123, n. 29; p. 1198, n. 37; p. 1200, n. 53; p. 1202, n. 73, 74.

addition thereto, as Habersham Park lots 47, 63, 78, 93, and 108, to do certain paving under that certain ordinance of said Mayor and Council numbered 376 and entitled 'An ordinance to provide for the improvement and paving with asphaltic concrete, Topeka type, with asphaltic top two inches thick and concrete base four inches thick of the roadway or space between the sidewalks upon the following portions of the following streets in the City of Brunswick: Union Street from the north side of First Avenue to the south side of G Street, Prince Street from the east side of Union Street to the east side of Albany Street, Albany Street from the south side of Prince to the south side of Albemarle Street, Albemarle Street from the east side of Albany Street to the Boulevard, Mansfield Street from the east side of Newcastle Street to the west side of Union Street, Newcastle Street from the south side of Mansfield Street to Hanover Park; and for other purposes,' adopted by the Mayor and Council of the City of Brunswick on August 6th, 1919, that certain portion of said Albemarle Street in said city alongside and opposite said lot, and to begin such work within thirty days after the service of notice so to do, and to complete the same within thirty days after service of such notice, said paving being required to be laid according to the lines, grades, plans, specifications duly adopted by the Mayor and Council of the City of Brunswick, said notice having been duly and legally served on said named the American Home Corporation, the said [company?] failed to do such work and to comply with such notice; and whereas the Mayor and Council did thereupon, and after such failure on the part of said American Home Corporation to begin such work or have the same done, and said portion of said street has been paved in compliance with the laws and ordinances in respect thereto at the cost of $938.35, and the said American Home Corporation has not paid the said cost of the same to the Mayor and Council of City of Brunswick; and whereas, the charter and ordinances of the City of Brunswick authorize the execution to issue therefor:

"Now therefore: To the Marshal of the City of Brunswick: You are hereby commanded that of the goods and chattels, lands and tenements of said the American Home Corporation, being the person who returns said described premises as the owner thereof for city taxes to be found within the corporate limits of the City

of Brunswick, you cause to be made by levy and sale thereof the sum of $938.95, the cost of so paving said portion of said street and all costs of collection, whereof the said American Home Corporation is convicted and liable, and have you the said sums of money before the Mayor and Council of the City of Brunswick at its meeting to be held on the 26th April, 1920, in payment for the cost of laying said paving and costs; and have you then and there this writ, with your actings and doings entered hereon."

On June 23, 1920, the fi. fa. was duly entered on the general execution docket of the county. On May 2, 1922, the above-mentioned purchase-money mortgage having theretofore been foreclosed against the American Shipbuilding Company, the land was regularly sold by the sheriff, under the execution issued upon the judgment of foreclosure, to A. J. Gordon. On November 9, 1922, Gordon conveyed an undivided one-fourth interest in the land to a syndicate of persons composed of himself, J. H. Hopkins, R. R. Hopkins, and W. A. McDonald Sr. In November, 1922, the last-named persons conveyed the land to the "Gordon Realty Company," a corporation in which J. H. Hopkins was a stockholder. All of the said several deeds were duly recorded. At the time of the original transaction first above mentioned and at the time the paving ordinance was adopted, J. H. Hopkins was an officer and stockholder in the Habersham Park Land Company, and was also mayor of the city and voted for adoption of the ordinance. On July 31, 1924, certain of the lots that were sold by the sheriff and included in the sheriff's deed and the several succeeding deeds last mentioned were levied upon by the city marshal under the fi. fa. issued by the city officers for costs of paving as above stated. Against this levy the said Gordon Realty Company interposed a statutory claim. The claim case was tried in the superior court by the judge without a jury, upon an agreed statement of facts substantially as above set forth, under a stipulation that the judge should determine the question: "Is the property levied upon and claimed subject to said paving execution under the law in view of the facts above detailed?" It was further stipulated that the judge should hear and determine the case upon the agreed statement of facts without the intervention of a jury, either in term time or vacation, with the right to the losing party to make a motion for a new trial or to proceed by direct bill of exceptions for the purpose

of having the judgment reviewed. A judgment was rendered holding the property "not subject." The City of Brunswick, as plaintiff in fi. fa., excepted, assigning error on the ground that the judge should have found the property subject to the execution in favor of the city, and erred in not so finding.

*R. D. Meader,* for plaintiff.

*Krauss & Strong* and *F. M. Scarlett,* contra.

ATKINSON, J. It is provided in the Civil Code (1910), § 3329: "The following liens are established in this State: (1) Liens in favor of the State, counties, and municipal corporations for taxes." And in § 3333: "Liens for taxes due the State or any county thereof, or municipal corporation therein, shall cover the property of taxpayers liable to tax, from the time fixed by law for valuation of the same in each year until such taxes are paid. . . Such liens for taxes are hereby declared superior to all other liens, and shall rank between themselves as follows: First in rank, taxes due the State; second in rank, taxes due the counties of the State; third in rank, taxes due to municipal corporations of the State." A general law was enacted and approved October 19, 1885 (Acts 1884-85, p. 148), which provides: "That any municipal corporation in this State shall have full power . . and authority to enforce the collection of any amount due or to become due to it for paving streets . . in such city, by execution to be issued by the treasurer against the person or persons or corporation or corporations by whom any such debts may be due or may become due, which executions may be levied by the marshal of such city on the real estate of the owners against whom such executions shall issue, and after advertisement and other proceedings, as in cases of sales for city taxes, the same may be sold at public outcry in manner pointed out in the act of the General Assembly approved February 27, 1877, entitled 'an act to provide for the manner of tax sales by municipal corporations in this State, and for other purposes,' and all sales made by such city under execution shall be made subject to the regulations of the said act as to purchase by said corporations and redemption by owner after sale." The provisions of this act have been included in the Civil Code (1910), § 869. The several foregoing provisions, being general law, became by operation of law a part of the charter of the City of Brunswick.

It is declared in section 11 of the act approved August 22, 1905

(Acts 1905, p. 680), amending the charter of the City of Bruns-
wick: "That the mayor and aldermen of said city shall have the
authority and power . . to order the owner of any lot to make
such pavements or sidewalks, or to pave such sidewalks adjoining
said lot, . . as said mayor and aldermen may deem necessary;
or to pave one third of the streets next such lot . . as said
mayor and aldermen may think best; . . and if such owner
shall fail or refuse to begin doing in good faith the paving .. .
which he may be directed to do by ordinance or resolution, within
thirty days after being served with a copy of the order of said
mayor and aldermen in that regard, or after begun such work
shall fail to complete same within a period of time to be fixed by
said mayor and aldermen, then and in either case, unless the mayor
and aldermen grant further time, the mayor and council of the
City of Brunswick shall be empowered to lay such sidewalk, pave
such street, repair such pavement or streets . . at the cost and
expense of such owner, and issue execution against such owner
for such amount as it may cost them to do said work, with costs,
which execution shall be issued, levied, returned, and directed as
tax executions against owners of returned property in said city;
and all further proceedings on said execution as to advertising and
selling the property shall be the same as in case of advertisement
and sale under tax executions in the city. For these purposes the
person returning and claiming such lot . . for city taxes shall
be regarded and taken to be the owner thereof; and if two or more
make return of and claim to own the same lot, the city authorities
may proceed against all or either of them, and leave to them the
settlement of the question as to who in fact is owner and liable;
for all or either of them shall be liable, as between them and said
authorities, to do said work in the first instance, and for the cost
of doing it by said authorities as aforesaid in the second instance."
Section 11 of said act then proceeds to provide for service of the
notice to the owners of lots, and that in instances "where no per-
son returns or claims such property as shall be required to be . .
paved around, either for sidewalk or street . . as above men-
tioned, then no notice shall be given, but said mayor and council
shall note the fact, and at once proceed to do such work, and then
issue executions for the amount of the same and costs against the

property, as tax executions issue for taxes against non-returned property."

As the municipal ordinance was adopted and the paving of the street by the city under that ordinance occurred prior to the act approved July 15, 1924 (Acts 1924, p. 459), that act does not control the case, and its provisions will not be stated. Under a strict construction of the statute, the provision in section 11 of the act of 1905 (Acts 1905, p. 680), which authorizes the city to "issue execution against such owner for such amount as it may cost them to do said work, with costs," and which provides that the "execution shall be issued, levied, returned, and directed as tax executions against owners of returned property in said city," etc., was sufficient to necessarily imply a lien against the owner of returned property, and that such lien would bind all the property of the owner in the city, because an "execution" which gives the right to levy, seize, and then with no further proceedings thereon to advertise and sell the property, necessarily implies a lien. The language, "all further proceedings on said execution as to advertising and selling *the property* shall be the same as in case of advertisement and sale under tax executions in the city," shows clearly that the contemplated lien was one on the particular property improved. As the issuance of an execution creates a lien under which the municipal authorities may seize and sell the property improved, it follows further that in doing these acts, that is, in issuing the execution, seizing and selling under it, the municipality exercises the taxing power. *Georgia Railroad &c. Co.* v. *Town of Decatur,* 137 *Ga.* 537 (73 S. E. 830, 40 L. R. A. (N. S.) 935). No reason appears why an execution issued in pursuance of a taxing power for public convenience and the public good should not be classed as an execution issued for taxes in the general sense. This seems to be a necessary implication. The city might, if it sees proper, raise money by direct taxation for the specific purpose of making street improvements; and the fact that by the method of assessment under the provisions of its charter it imposes the burden upon the property-owner whose property would be benefited by the improvement does not divest the proceeding of the city, in issuing and levying the execution, of its character as an exercise of the taxing power. In the case just cited it was said: "Though assessments for local improvements are not taxes within the mean-

ing of the requirement of the constitution that taxes must be ad valorem and uniform, nevertheless assessments for local improvements, such as street paving and sewerage, are an exercise of the taxing power." In 1 Page & Jones on Taxation by Assessment, 13, § 8, it is said: "By the great weight of authority a local assessment, levied in return for the benefits conferred upon the property assessed by the improvement for which the assessment is levied, is a kind of tax. The power to levy local assessments is said to be 'essentially a power to tax.' The power of levying a local assessment is 'distinguishable from our general idea of a tax, but owes its origin to the same source or power.' This proposition means, primarily, that an assessment is an enforced contribution for a public object. It is a public tax in the sense that it is levied for a public object; it is a local tax in the sense in which most public taxes are local—that it is limited to a certain locality." The conclusion announced above is based upon the essential nature and character of the execution which the city was authorized to issue, and it is not necessary to invoke the provisions in the charter of the city that "all further proceedings on said execution as to advertising and selling the property shall be the same as in case of advertisement and sale under tax executions in the city." The lien upon the property in question having the rank of a tax lien, its dignity would take rank under the statute above quoted (Civil Code (1910), § 3333), and consequently would take priority over a prior mortgage. The court erred in finding the property not subject.

*Judgment reversed. All the Justices concur.*