KRUMPELMAN et al., Appellants,

v.

LOUISVILLE & JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT et al., Appellees.

LOUISVILLE & JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT et al., Appellants,

v.

KRUMPELMAN et al., Appellees.

Court of Appeals of Kentucky.

June 20, 1958.

Lee S. Jones, Louisville, for Florence R. Krumpelman, Robert M. and Evelyn M. Bailey.

William E. Berry, Acting Director of Law, James G. Becker, Blakey Helm, Louisville, for Louisville and Jefferson County, Metropolitan Sewer Dist. and City of Louisville.

Richard B. Crawford, Alfred C. Krieger, Louisville, for Morrison & Conklin Const. Co. Inc., amicus curiae.

Stites, Wood, Helm & Peabody, James W. Stites, Carl L. Wedekind, Jr., Louisville, for Kentucky Trust Co.

STEWART, Judge.

This action was filed as an agreed case under KRS 418.020, and involves the proposed construction of sewers and drains in territory newly annexed to the City of Louisville. The particular area contemplated to be served is a triangular tract across Taylorsville Road from Bowman Field in the southeast section of the city.

Under an Act adopted by the 1946 Legislature (KRS Chapter 76) the Louisville and Jefferson County Metropolitan Sewer District (hereinafter referred to as "Metropolitan") was created for the purpose of providing adequate sewer and drainage facilities in and around the City of Louisville. This Act recited that such a sewer district had no authority to levy property taxes but that it had the right to fix rates, rentals and charges, to be collected from the property owners served in the manner prescribed by the district. Nevertheless, this right to establish and collect sewer rates and other charges was subject to the approval, supervision and control of the legislative body of the city.

Service collections have furnished the sole source of income for Metropolitan in its operation and maintenance of the city's sewer and drainage systems and in its construction of additional sewers. However, the income of Metropolitan by itself was insufficient to provide funds for the installation of both trunk and lateral sewers in areas annexed to the city since July 1, 1946 (when KRS Chapter 76 became effective). These sections had been largely improved with residences depending on septic tanks for sewage disposal. The use of such methods in these closely-built-up sections presented a serious health menace, and, to bring relief as early as possible, Metropolitan adopted a policy of laying trunk sewers to reach all areas possible. This plan required separate financing of the lateral sewers which connected to these trunk sewers.

The 1952 Legislature amended the Act under which Metropolitan was created by providing in KRS 76.171 that where adequate sewers or drains have not been constructed in any territory annexed to a city of the first class since July 1, 1946, the city legislative body may by ordinance, on recommendation of the director of works, or of the board of a metropolitan sewer district if the city be in such a district, install branch or lateral lines within such territory to connect with the city's sewer or drainage systems.

KRS 76.172 of the Act was also amended in 1952 so as to authorize the sewer district to construct such branch or lateral sewers at the exclusive cost of the owners of land as set forth in KRS 93.370 with reference to the improvement of streets or alleys. The method of financing prescribed by KRS 93.370 was by the use of apportionment warrants issued against the benefited property.

In addition, the 1952 amendment placed the responsibility for approving plans, advertising for bids and issuing apportionment warrants on city officials, in accordance with KRS Chapter 93. Since the projects for new sewers and contracts for sewers generally were in all other cases made exclusively by Metropolitan, this statutory method as to lateral sewers proved to be impracticable. Therefore in 1956 the Legislature clarified KRS 76.172 by placing the aforementioned administrative features, as well as the construction work and control relating to lateral sewers, in the hands of Metropolitan. However, the 1952 amendment which fixes the apportioning of the cost among owners of benefited property remained unchanged.

The 1956 amendment further cleared up KRS 76.172 by incorporating the applicable wording of KRS 93.370 therein, which the 1952 amendment referred to only partially. This section now reads:

"When such sewers or drains are located in a public street or alley, the construction thereof shall be at the exclusive cost of owners of lots in each one-fourth of a square to be equally ap-

portioned by the metropolitan sewer district according to the number of square feet owned by said property owners. Each subdivision of the territory bounded on all sides by principal streets shall be deemed a square."

The 1956 amendment also states in subsection (6) of KRS 76.172 that a lien is created against the respective lots or land for the cost of such sewer facilities with interest thereon at the rate of six per cent per annum. Subsection (8) thereof requires Metropolitan to enter a record of all apportionment warrants in a register. Subsection (9) thereof provides that a lien shall exist from the date of the apportionment warrant, but that such lien shall not be valid against a purchaser for a valuable consideration without notice unless the apportionment warrant is entered and registered within ten days of its issuance.

Pursuant to the Act as amended, the Board of Aldermen of the City of Louisville, on Metropolitan's recommendation, enacted Ordinance No. 132, Series 1957, calling for the installation of sanitary sewers and property service connections in the area involved in the instant case. These five points are presented for adjudication:

(1) Is the lien given by the 1956 Act (or KRS 76.171 and 76.172) to the holder of an apportionment warrant for the construction of lateral sewers and service connections superior to any lien (except the statutory lien of other taxes) existing against the property benefited?

(2) Is the 1956 Act constitutional as to territories annexed to the City of Louisville since July 1, 1946?

(3) Is Ordinance No. 132 valid in respect to delegating the right to Metropolitan to make contracts for the construction of lateral sewers and property service connections at the cost of the property owners and issuing apportionment warrants therefor?

(4) Is Ordinance No. 132 valid in providing that such cost of construction of lateral sewers and of property service connections be assessed against the property owner without any provision therein for payment in annual installments?

(5) Is property that cannot be served directly, although it lies within the quarter block where sewer laterals are to be laid, subject to assessment to any extent in apportionment of the cost of such sewer construction?

The lower court answered each of the first four questions in the affirmative and the last or fifth in the negative. The parties hereto have prosecuted a joint appeal from the judgment entered in order to obtain a ruling of this Court on each of these questions. The Kentucky Trust Company, Florence R. Krumpelman and Robert M. and Evelyn M. Bailey, parties litigant below, address themselves only to certain of the questions, and we shall mention the points they raise in this respect in the course of this opinion.

I

Appellant, The Kentucky Trust Company (herein called "Mortgagee"), is the holder of mortgages against two parcels of improved land situated in the area to be sewered. One of these, which was executed and recorded May 2, 1952, is held against property owned by appellant, Florence R. Krumpelman; and the other, which was executed and recorded June 12, 1957, is held against property owned by one William V. and Ethel May Corbett and is herein referred to as the "Corbett mortgage". The Corbetts are not parties to this appeal.

Mortgagee appeals from that portion of the judgment which ruled that Metropolitan's apportionment warrants, when issued, will take precedence (1) over its 1952 Krumpelman mortgage which was recorded before the 1952 and 1956 amendments were passed, and (2) over its 1957 Corbett mortgage which was recorded before any notice of any apportionment warrants was given. It urges these grounds for reversal:

(1) The assessments for the cost of sewer construction are not to be considered

taxes; (2) the Act, as construed by the lower court, impairs the obligations of contracts entered into before any apportionment warrants were issued; (3) there is no statutory authority for granting superiority to the apportionment warrants over recorded liens; and (4) there is no authority for granting priority to sewer apportionment warrants over previously recorded liens.

■■ We agree with Mortgagee that it is very generally held that special assessments or special taxes to pay for local improvements are not taxes in the ordinary or strict sense of the term. See Gosnell v. City of Louisville, 104 Ky. 201, 46 S.W. 722; and Kilgus v. Trustees of the Church Home for Females, 94 Ky. 439, 22 S.W. 750. In practice, and as usually understood, there is a clear distinction between taxes and special assessments. The latter are local burdens laid on property made for a public purpose, but fixed in amount once and for all time with reference to the special benefit which such property derives from the cost of the project, while taxes are generally held to be a rate or duty levied each year for purposes of general revenue, regardless of the direct benefit accruing to the person or property taxed. See Dressman v. Farmers' & Traders' Nat. Bank of Covington, 100 Ky. 571, 38 S.W.1052, 36 L.R.A. 121; and 63 C.J.S. Municipal Corporations § 1290b, page 1026.

■ However, broadly speaking, special assessments for benefits are part of the system of taxation, often being referred to as a method or species of taxation. The levy of such an assessment is an exercise of the taxing power. See Forester v. Coombs Land Co., 277 Ky. 279, 126 S.W.2d 433. So in a general sense of the word "taxes" includes a special assessment, and we have held that special assessments are at least in the nature of a tax. See City of Olive Hill v. Gearhart, 289 Ky. 53, 157 S. W.2d 481. This follows because they must be levied for a public purpose, and because they are an enforced contribution on the property owner for the public benefit.

It is next argued by Mortgagee that for the Court to construe the 1956 amendment to the Act as granting priority to the local assessment impairs the obligation of contracts which were entered into by Mortgagee before the apportionment warrants were issued. This contention is based upon the theory that the wording of the Act itself makes no attempt to give superiority to a sewer improvement lien over a preexisting lien that may have attached to the property affected; and it insists this must especially hold true as to its 1952 mortgage lien which was executed before the 1952 amendment was enacted. In addition, it is maintained that the same reasoning prevails as to the 1957 Corbett mortgage which was created after this amendment became effective but before any attempt was made to award the contract under discussion.

■ Our answer to this argument is that it is settled beyond controversy that the Legislature may create a lien for general taxes or for local assessments paramount to all other liens regardless of the priority of the latter as to time. There is no difference in this respect between special improvement assessments and general taxes. As has been adverted to, both are levied under the theory that they are for the general good, and the same powers for enforcing the collection of both special assessments and general taxes are generally given. A statute of this kind is universally held not to be open to the objection that it impairs the obligation of a contract or that it brings about the deprivation of a vested right. This principle of law is so well established that we deem it unnecessary to dwell on it at length, and we shall simply refer to these authorities where this concept is discussed at length: 48 Am.Jur., Special or Local Assessments, section 202, page 728; C. H. Hamilton's Law of Special Assessments, section 708, page 699; and 63 C.J.S. Municipal Corporations § 1570, page 1401.

Since grounds (3) and (4) encompass each other we shall not treat them separately. We should add here that these grounds present the important issues to be determined in this case.

■ Where the statute makes a special assessment a lien on property, and is silent as to its priority, the lien so created may be given priority over any and all other liens, whether prior or subsequent to the assessments, *if such an intention can be gathered from the Act, but not otherwise* (emphasis ours). See 48 Am.Jur., Special or Local Assessments, section 202, page 729.

The 1952 amendment made no mention of the word "lien", but simply provided in subsection (1) of KRS 76.172 that " * * * when such sewers or drains are located in a public street or alley, the contruction thereof shall be at the exclusive cost of the owners of land as provided in KRS 93.370 as to improvements of streets or alleys." KRS 93.370 merely sets forth the method of apportioning the cost of the improvement among the property owners benefited. The above amendment also made KRS 93.470 through 93.600 applicable to sewer assessments by reference. KRS 93.470, at the time the 1952 amendment was passed and also at present, provides in subsection (1) that " * * * the department of public finance, upon certification by the director of works of the inspection and acceptance of the work, shall make out all apportionment warrants for *which liens are given* for improvements of public ways, * * *" (emphasis ours).

The 1952 amendment provided in subsection (2) of KRS 76.172 that " * * * the other provisions of KRS Chapter 93 applicable to streets and alleys shall apply to such construction of sewers and drains, * * *." This provision by reference especially calls to our attention KRS 93.450, which recites that " * * * a lien shall exist against the respective lots for the cost of improvement of public streets and alleys, * * * for the apportionments made as provided in KRS 93.370, 93.380 and 93.390, and interest thereon at the rate of six per cent per annum."

Therefore, in view of what has been shown, we can safely state that a lien is provided in the 1952 amendment as to the cost of the lateral sewers. Furthermore, it will be recalled that a lien is expressly embraced in the 1956 amendment by subsection (6) of KRS 76.172.

Yet, what about the question of priority? The rule set forth above states that in event the statute is silent as to priority such an intention may be gathered from the Act. It would seem that such a legislative intent may be derived from the general statutory provisions regarding taxation. Thus it has been held that a lien for an assessment is prior to mortgages existing at the time it attaches, under a statute making such·an assessment a part of the taxes due on the property and collectible as other taxes, and making tax liens prior to contract liens. See Seattle v. Hill, 14 Wash. 487, 45 P. 17, 35 L.R.A. 372, and the note thereto; City of Brunswick v. Gordon Realty Co., 163 Ga. 636, 136 S.E. 898; Morrissey v. Shriver, 88 Okl. 269, 214 P. 702.

■ Despite the fact that only a lien with no accompanying words is given in the statutes under discussion, it is our opinion it was the intention of the Legislature to make such a lien take precedence over all contract liens of private parties that attached after the 1952 amendment became effective. Courts have read into an assessment lien certain qualities no ordinary lien possesses. This is amply shown by this statement from Lybass v. Town of Ft. Myers, 56 Fla. 817, 47 So. 346, 350:

"If, as it seems, governmental statutory liens for local improvements may be made superior to mere contract liens of private parties acquired after the enactment of the statute providing for the lien, it is not necessary for the statute to in terms enact the priority.

From the nature of the governmental function being performed and the rights of the public in the enforcement of the police powers, it is clear the intention of the Legislature was to put such liens upon the same footing as tax liens, thereby giving them priority over contract liens of private parties, acquired subsequent to the enactment of the law providing for the lien of the municipality. * * *"

It is our opinion the reasoning stated in the Lybass case is sound and should apply in this jurisdiction in determining the priority of the type of liens in controversy. See also Morrissey v. Shriver, 88 Okl. 269, 214 P. 702; Carstens & Earles, Inc., v. City of Seattle, 84 Wash. 88, 146 P. 381, Ann. Cas.1917A, 1070.

The 1952 amendment, which first established a lien for any proposed sewer improvements in a city of the first class, did not go into effect until June 19, 1952, whereas the Krumpelman mortgage was executed and recorded on May 2nd of that year. Under such a factual situation this inquiry is posed: Will the sewer assessment, if and when it is made, have priority over the Krumpelman mortgage? It is our view it will.

The sewer assessment statute under discussion gave the City of Louisville absolute power, in its discretion, to install sewers and drains in the territory in litigation and to apportion the costs therefor in the manner hereinbefore set out. It has also been shown that a lien is given upon all the property benefited by such improvements.

Although the city is limited to the property specifically benefited in the steps it may take for collection of the assessment expenses, it seems to us, from the nature of the public interest involved, the assessment claim against such property should be superior to all others. One who acquires an interest in land takes it subject to the right not only of the proper governmental authorities to lay general taxes upon it, but of a city wherein it lies to impose upon it the burden of paying the expenses of necessary public improvements which confer upon the land a special benefit. Statutes giving a lien for local assessment are remedial and therefore should be liberally construed and should also be interpreted to accomplish the legislative purpose. See Dressman v. Farmers' & Traders' Nat. Bank of Covington, supra.

The Dressman case also points out that one who holds a mortgage can have no higher equity or claim in the property than the mortgagor gave him. In this connection the opinion states [100 Ky. 571, 38 S. W. 1054]: "His (the mortgagee's) interest and title in same are conditional, and less than that of the mortgagor; and his rights in the property are entitled to no greater consideration than those under whom he claims. He, with the owner, has profited by the enhanced value given the property by the improvements which the assessment is made to pay for. * * *"

It is our belief, and we accordingly hold, that the lien provided for in the 1952 amendment will take priority over the Krumpelman mortgage. As to the Corbett mortgage which Mortgagee acquired on June 12, 1957, the law is well settled in this state, as amply shown in the Dressman case, cited above, that the local assessment lien shall be prior in rank to it.

This ruling is not in conflict with the cases relied upon by Mortgagee because in those decisions the courts were dealing with the question of priority between a mortgage and a lien for Workmen's Compensation premiums (Domenech v. Lee, 1 Cir., 66 F.2d 31, and Adkins v. Carol Mining Co., 281 Ky. 328, 136 S.W.2d 32); or a lien for wages (Turner v. Randolph, 213 Ky. 55, 280 S.W. 462); or a vendor's lien (Indiana Truck Corporation of Kentucky v. Hurry Up Broadway Co., 222 Ky. 521, 1 S.W.2d 990). There the rights of private parties alone were involved and no question of the proper application of governmental powers or the construction of

liens relative to the exercise of police power was shown.

Mortgagee asserts in connection with the 1956 amendment that subsection (9) of KRS 76.172 shows, at least by implication, that the Legislature intended the improvement lien to take effect only when recorded; otherwise there would have been no necessity for the provision, it reasons. Subsection (9) provides: "The lien shall exist from the date of the apportionment warrant, but a lien shall not be valid against a purchaser for a valuable consideration without notice, unless the apportionment warrant is entered and registered within ten days of its issuance." This is the same language as that used in subsection (2) of KRS 93.470, which was formerly Carroll's Statute, § 2839.

In the case at bar we have a lien created by an ordinance subsequent to the execution of both mortgages. The issuance of apportionment warrant is purely a ministerial act and does not have any effect on the lien's priority, which is already created by statute. The provision in question does, however, set forth a requirement as to recordation. This is that, in order to give notice to a purchaser for value, the apportionment warrant must be recorded within ten days of its issuance. Such a condition, of course, applies only to a good faith purchaser who has bought *subsequent* to the enactment of the ordinance, the completion of the work and the issuance of the apportionment warrants. How else would a purchaser of an improved lot, or a mortgagee who is deemed to be in a similar category to a purchaser, know of the existence of an outstanding lien? Obviously Mortgagee cannot apply the provision in the sense of time as to priority because it does not meet the requirements of a bona fide purchaser. See Barfield v. Gleason, 111 Ky. 491, 63 S.W. 964.

## II

Turning now to the second contention, appellant, Florence R. Krumpelman, who owns a lot within the area sought to be improved, contests the legality of subjecting her property to an assessment for the cost of the proposed sewer construction pursuant to the ordinance heretofore mentioned. The basis of her contention is that the city formerly built all sewers and drains from taxes or from proceeds of general obligation bonds. Some of these bonds are still outstanding and, as a consequence, she as a taxpayer has been paying the costs of sewers for other property owners. Under the ordinance she will be required in addition to liquidate the entire cost of the sewer connection to her own lot. Appellant therefore maintains that the effect of the ordinance is to create an inequality in the tax burden on different property owners in the city in violation of Section 171 of the Constitution of Kentucky.

This same argument was advanced in Baker v. City of Princeton, 226 Ky. 409, 11 S.W.2d 94, 96, and there this Court, after pointing out that although a local assessment imposes an involuntary burden upon the property improved and that the right to do so is derived from the taxing power, held that such a charge is not strictly speaking a tax within the purview of the above constitutional section. That case, moreover, specifically ruled that Section 171 of the Kentucky Constitution has "no application to assessments for public improvements which confer local benefits." See also Robertson v. City of Danville, Ky., 291 S.W.2d 816.

## III

The ordinance involved in this litigation delegates to Metropolitan the duties as to letting the sewer construction contract and as to issuing apportionment warrants. The third inquiry raised is whether these matters may be delegated. We have no doubt but that such may be done. Both of these acts are purely ministerial in their nature under the ordinance, and it is permissible to authorize a proper agency to perform them. This Court in Barfield v. Gleason, 111 Ky. 491, 63 S.W.

964, held that the advertising for bids, the letting of contracts and the issuing of apportionment warrants are all administrative functions that may be shared with another. In fact, the delegation of other and similar duties to Metropolitan has been specifically upheld by this Court. See Veail v. Louisville & Jefferson County Metropolitan Sewer District, 303 Ky. 248, 197 S.W.2d 413.

## IV

The fourth question concerns the validity of the ordinance because it does not contain a provision which permits installment payments to be made on the improvement assessment. The 1952 amendment made KRS Chapter 93 applicable to public sewer construction, and KRS 93.480 through 93.530 of that Chapter authorized the payment of assessments for public improvements in cities of the first class to be made in installments. The 1956 amendment which undertook to clarify KRS 76.172, as hereinbefore mentioned, did not embrace in that statute as reenacted language to the effect that installment payments may be resorted to in retiring a sewer assessment.

We conclude the omission from the Act of a recital granting the right to pay the assessment in installments does not invalidate it. The recent case of Robertson v. City of Danville, Ky., 291 S.W.2d 816, construed an enactment of the 1956 Legislature, Acts 1956, c. 239, which provided that any city at its option could construct sewers under the Act and that, after the sewers were built, no lump sum assessment should be laid upon any property so improved as its share of the total cost of the project, but that instead each year a levy should be made against all the benefited property in whatever amount might be necessary to produce the principal and interest requirements of that year. This method of paying for the assessment was challenged as illegal because it afforded the property owner no opportunity to discharge his share of the debt at the outset. This Court held, however,

the Legislature could grant authority to a municipality to compel a property owner to pay off a sewer assessment in no manner except in installments. Accordingly, it is our view that if a statute is valid which provides only for installment payments, the instant statute is likewise valid in that it requires the assessment debt to be paid in a lump sum. It is for the Legislature to determine the plan of special assessment payments.

## V

The final contention is made by appellants, Robert M. and Evelyn M. Bailey. They assert that a part of their property lies without the area to be served directly from the proposed sewer construction. The lower court interpreted the applicable statute to mean that the sewer assessment should be made only against the property which abuts such improvement, and that property in each street in the last square, nearest to Taylorsville Road, cannot be served directly by the sewage system and should therefore not be assessed.

The statute speaks in terms only of quarter squares and makes no reference to any division of them. There are numerous cases where this Court has held in connection with street improvements that only the land in the quarter squares where alleys are built is to be assessed for the cost of constructing such alleys. See Washle v. Nehan, 97 Ky. 351, 41 S.W. 1040, 3 Ky. Law Rep. 387; Dumesnil v. Shanks, 97 Ky. 354, 30 S.W. 654, 31 S.W. 864, 17 Ky. Law Rep. 170; Dumesnil v. Gleason, 99 Ky. 652, 37 S.W. 69; Boone v. Nevin, 23 S.W. 512, 15 Ky.Law Rep. 547. This Court in the Washle and Shanks cases stated that underlying the whole question is the principle that only the property benefited by the improvement should bear the expense of it.

In the present case no direct benefit will be received by the property in each of the streets between the end of the sewer and Taylorsville Road, and it seems equitable and just that the assessment should

be limited to the property in those blocks which derives an advantage from the construction of the sewer. The trial judge correctly held that such nonbenefited property cannot be assessed for any of the sewers herein even though it lies within the quarter block.

Wherefore, the judgment is affirmed.