CASE 81—PETITION EQUITY—FEB. 3.

|100  571|
|f104  694|

# Dressman v. Farmers' & Traders' National Bank.

APPEAL FROM KENTON CIRCUIT COURT.

1. STREET IMPROVEMENTS—SPECIAL ASSESSMENTS—PRIORITY OF LIENS.—A lien given by a city charter for local assessments for street improvements is prior and paramount to a lien created by mortgage, where the mortgage lien was created after the adoption of the charter, but before the passage of the ordinance requiring the improvement to be made.

D. A. GLENN FOR APPELLANT.

1. The lien attaches at the time fixed by the statute, and parties who acquire interests subsequent thereto, will be treated as purchasers *pendente lite*; and express words are not necessary to authorize the inference that the statute intended to make the lien paramount. (Elliott on Roads and Streets, pp. 432-435.)

2. Local assessments to pay for the improvement or repairing of streets, are levied under the same general sovereign power which is exercised in levying general revenue taxation; while it is not strictly a tax it is levied by the sovereign power for the general good, and one who acquires an interest in land takes it subject to the right of a sovereign to levy general taxes against it. Elliott on Roads and Streets, p. 433.)

3. The lien of the individual should yield to that of the city because of the benefits received and the increased value of the property by reason of the improvements. (Elliott on Streets and Roads, p. 433; Church v. McAtee, 8 Bush, 508.)

JAMES W. BRYAN FOR APPELLEE.

1. A local assessment for street improvement is not a tax. (Elliott on Roads and Streets, pp. 422-4; Zable v. Orphans' Home, 92 Ky., 89; Johnston v. Louisville, 11 Bush, 527.)

2. The records were open to the contractor when he made his bid, and he had ample opportunity to inform himself as to the liens on the property, and should not be adjudged to have a prior lien as against a mortgage of which he had notice before his lien was created.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT:

This case involves a question of law growing out of these facts: The city of Covington, through its contractor, the appellant, improved Linden avenue by grading and paving, and by an ordinance properly passed, assessed and levied a lien upon a couple of lots located in Morton's subdivision and fronting said Linden avenue, where the work was done, to pay their proportionate part of the expense of the improvement. This ordinance was passed and lien imposed August 2, 1892, upon the property which was owned by H. T. Morton, who, previous to his death in December, 1889, had given a mortgage on this property to the appellee, the Farmers & Traders National Bank.

There is no question raised as to the regularity of the proceedings of the council, or as to the validity of the mortgage to appellee. The sole question is, which lien has priority. The court below held that appellee was entitled to be paid first, and ordered a sale of the property to satisfy both liens. Upon the sale of said property, it brought less than the amount of appellee's claims, and appellant was left without relief, and brought his case to this court and asks a reversal of the judgment of the lower court.

The Legislature of Kentucky, by its act of March, 1850, amending and reducing into one the various provisions concerning the city of Covington, in article 2, section 7, gave the council full power and authority to cause and procure all streets to be graded and paved, and apportion the costs and expenses thereof equally

on the fronting and abutting property and the owners thereof, according to the front feet, and gave a lien on the property for its proportion of the expenses in this language: "A lien is hereby given on the lots or parts of lots for same, which cost and expenses may be listed and collected as other taxes are by the city collector, or any special collector who shall have authority to sell and convey the lots or parts of lots, according to such by-laws and regulations as shall be adopted by the council." The Legislature also provided by subsequent legislation that such lien might be enforced in a court of equity, "wherein all the lien-holders could come and have their liens adjusted."

The mortgage of appellee was acquired December 11, 1889, a date subsequent to the city charter, but prior in time to the date of the ordinance requiring the improvement to be made. "The appellee contends that an assessment made for constructing a street by the city council does not partake of the character of a tax levy, and that in the absence of a charter provision making it a first lien upon the property abutting the improvement it takes its place in line with the existing lien claims against said property," and can only be paid after all prior lien encumbrances have been discharged in full.

It is manifest that this contest for priority is really between the city of Covington, on the one hand, and the mortgagee on the other. It is admitted by appellant that the sections of the city charter quoted above do not, by express provision, give the city a first lien

for local assessments for street improvement, but it is insisted that such was the intention of the "law-making" power.

The attention of the court has not been directed to an adjudicated case where the precise question involved in this appeal has been passed upon. The distinction between taxes, pure and simple, and assessments for local purposes, has been frequently pointed out in opinions of this court, and it has been held that an assessment for a supposed benefit was not a tax within the meaning of the law exempting property from taxation. (Zabel v. Louisville Baptist Orphans' Home, 92 Ky., 89; Johnson v. Louisville, 11 Bush, 527; Sheehan v. Good Samaritan Hospital, 50 Mo., 155.)

A pure tax is a burden imposed by the sovereign power on all property and persons alike, and is compensated for by the equal protection which all receive from such power; and, whilst the property is resorted to for the purpose of ascertaining the amount of the tax, it is the individual and not the property, who pays the tax. Whilst in the case of a local assessment for local improvement it is the property which is primarily liable and not the individual, as it is supposed to be compensated for by local benefits which come from such improvements enhancing the value of the property assessed to the extent of the assessment laid upon it. This is the real distinction between them.

But it is not apparent why this difference in the character of these taxes should be so confidently invoked to defeat the claims of the appellant for a priority.

Both are levied under the sovereign power of the State, and both are levied under the theory that they are for the general good; and the same general powers for enforcing their collection are given. . It is true that in the case of a local assessment the city is limited to the property specially benefited in the steps it may take for collection of the assessment; but it seems to us that this is a greater reason why this claim against such property should be paramount to all others. The Legislature certainly has the power to create such a lien, and to give it priority over all private rights and interests. "One who acquires an interest in land takes it subject to the right to lay general taxes upon it, and to impose upon it the burden of paying the expenses of necessary public improvements which confer upon the land a special benefit. * * * Statutes giving a lien are remedial, and, therefore, to be liberally construed, and so construed as to accomplish the legislative purpose. In creating liens for improvement assessments, the Legislature makes secure compensation for what is, in truth, an industrial annexation of the land, for the street improved is, in a sense, an appurtenance of the land which increases its value, and whoever holds an interest in the land profits by the appurtenance, and ought, in justice, to be subjected to the lien which secures the assessment. It is, for these reasons, often proper to deduce from the general language of a statute giving a lien the conclusion that it gives a paramount lien to which mortgage estates or judgment liens must yield." (Elliott on Roads and Streets, page 334.)

By section 7, article 2, of the charter of the city of Covington, the city council of Covington are given ab solute power in their discretion to cause all streets to be graded and paved, and to apportion the costs and expenses thereof equally on the abutting lot-holders, according to the front feet, and a lien is given upon the lots for cost and expenses of such improvements, and they are authorized to direct a sale of these lots in accordance with the by-laws and regulations to be adopted by the city council, by their city collector. Whilst this language does not expressly say that such liens shall be prior in rank to other liens on said prop. erty, it seems to us that it does this by necessary implication. This power the city can exercise against the owner of the property, and certainly a mortgagee can have no higher equity or claim in the property than the mortgagor gave to him. His interest and title in same are conditional and less than that of the mortgagor, and his rights in the property are entitled to no greater consideration than those under whom he claims. He, with the owner, has profited by the enhanced value given the property by the improvements which the assessment is made to pay for.

In Nevin v. Allen, 15 Ky. Law Rep., 836, this court held that a homestead set apart to a widow and children, and which was by law exempt from liability for the owner's debts, might be subjected to pay an assessment for street improvement for which it was liable.

We are of the opinion that the lien provided for in

the section of the charter quoted, *supra*, existed from
the date when such charter became operative against
all the real property within the limits of the city.   It
was simply a suspended power which the council
could enforce whenever, in their discretion, the public
interests required it, and all persons dealing in such
real property were bound to take notice.   Any other
construction gives to the land-holder the power to so
encumber his land as to render nugatory the power
vested in the common council for the benefit of the
whole community to improve streets at the expense of
the abutting property holders.

We hold in this case that appellee took the mort-
gage on the lots in question subject to the power of
the city to require said lots to bear their proportion of
the expense of constructing the streets on which they
fronted, and that appellant was entitled to have his
claim for such construction paid first out of the pro-
ceeds of the sale of such lots.

For these reasons the judgment of the lower court
is reversed and the case remanded for proceedings con-
sistent with this opinion.