## No. 27713

**Glenn Wasson, d/b/a Wasson Masonry v. John O. Hogenson, Western Securities Company, a Nebraska corporation, Realbank, Inc., a Nebraska corporation, Julian L. Hutchinson, d/b/a AAA Sand & Gravel, Groussman-Bradley Construction Company, a partnership, Evelyn Barr Edmonson, Public Trustee of Arapahoe County, Colorado and Great-West Life Assurance Company and, Cherry Creek Valley Water and Sanitation District, a quasi-municipal corporation and, Pasterkamp Heating and Air Conditioning Company, a Colorado corporation, and Ankmar Door Sales, Inc., a Colorado corporation**

(583 P.2d 914)

Decided August 21, 1978.

Grant, McHendrie, Haines and Crouse, Ronald C. Butz, John Burrus, for defendant-appellee.

Tallmadge, Tallmadge, Wallace and Hahn, David J. Hahn, Jo Ann Weinstein, for intervenor-appellant.

Calkins, Kraemer, Grimshaw and Harring, James S. Bailey, for amicus curiae, Special District Association of Colorado.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This case presents for the first time in this court the question as to the relative priority between a deed of trust on real estate and a "perpetual lien" for installation charges incurrred by a water and sanitation district in making sewer services available to the real estate where the recording of the trust deed predates the installation of the sewer service. The trial court held (1) that the prior recorded deed of trust was a first and paramount lien and (2) that the foreclosure decree extinguished the "perpetual lien" of the district. We reverse.

### Factual Background

This is an appeal by the Cherry Creek Valley Water and Sanitation District (District) of a summary judgment in favor of Great-West Life Assurance Company (Great-West) in a mechanic's lien foreclosure action instituted by Glenn Wasson, d/b/a Wasson Masonry, against Hogenson, the owner; Great-West, the beneficiary of the deed of trust; and other mechanic's lien holders. The mechanic's liens having been paid, Wasson and the defendant mechanic's lien holders are not parties to this appeal.

The facts as they relate to the two remaining parties to the litigation were stipulated by the parties and, so far as material to the issues, are as follows:

On July 19, 1974, the owner of the property, John O. Hogenson, executed a deed of trust to the public trustee, with Western Securities Company as beneficiary, to secure a loan in the amount of $565,000 obtained to build twenty-two warehouses. The appellee, Great-West, the assignee of Western Securities Company, is the present owner. The deed of trust was

recorded in Arapahoe County on July 24, 1974.

On December 2, 1974, Hogenson, in order to obtain sanitary sewer service to the property, entered into a contract with the District, appellant, to obtain twenty-two sewer taps for $315 each to serve the warehouses. He paid $770 to the District, which represented 10% of the purchase price; the balance was to be paid at the time construction started on each warehouse unit. The balance of $6,930 was not paid. Sewer lines from the warehouse units were tapped into the District's main line on or about December 4, 1974.

Great-West commenced proceedings to foreclose its deed of trust through the public trustee on September 9, 1975. At the public trustee's sale, Great-West bid the property in for $575,763.09 and, there being no redemption, in due course received a public trustee's deed to the Hogenson property.

On September 11, 1975, the District recorded its lien in Arapahoe County. It also sought leave, which was granted, to intervene in the Wasson mechanic's lien forclosure proceedings in the District Court of Arapahoe County. The District then filed a complaint alleging that the charges for the services it had provided Hogenson constituted a "perpetual lien" on the property under the terms of section 32-4-113(1)(l)(VI), C.R.S. 1973,[1] which was superior to all private contract liens on the property, including the earlier deed of trust of Great-West.

The trial court, in ruling against the district, made the following observations, among others:

"Now, I do have some concern about how this may affect water and sanitation districts. I think I can't change the law the way I think the Legislature ought to have written the provision because it isn't written as a special assessment. The perpetual lien language does not contain the other language placing it on a parity of general tax liens, and I think that perpetual lien simply means that it's not a two-year lien, it's not a three-year lien, it's not a five-year lien, it's like a mortgage. It's a lien until it's paid or cut off by the foreclosure of some prior lien, so I think it does no violation to the word 'perpetual' to indicate that foreclosure of a prior lien could cut it off."

At the outset, it should be noted that Great-West does not now contend that an interpretation contrary to that of the trial court would be unconstitutional as violative of the "contract" or the "due process" clauses

---

[1] Section 32-4-113(1)(l)(VI) provides:

"Until paid, all rates, tolls, or charges shall constitute a perpetual lien on and against the property served, and any such lien may be foreclosed in the same manner as provided by the laws of the state of Colorado for the foreclosure of mechanics' liens. The board shall shut off or discontinue service for delinquencies in the payment of such rates, tolls, or charges, or in the payment of taxes levied pursuant to this part 1, and prescribe and enforce rules and regulations for the connection with and the disconnection from properties of the facilities of the district."

of the federal and state constitutions.[2]  It does contend, however, (1) that the statute in question does not purport to establish priority of the District's lien over existing rights in the property; (2) that the District's lien is not entitled to the type of inherent priority commonly afforded special assessment tax liens; and (3) that no public policy of this state exists which mandates a construction of the statute that would make the District's lien superior to a previously recorded deed of trust.

In view of this, Great-West, in its brief, points out that the function of this court is to determine the intent of the legislature and to interpret the statute in accordance with that intent. It further suggests that in making that interpretation, considerations of public policy should not arise unless the statute is ambiguous, citing *Sakrison v. Pierce,* 66 Ariz. 162, 185 P.2d 528 (1947). In the situation before us, the declared public policy is an integral part of the statute and, therefore, must be considered in the interpretative process by which we reach our conclusion.

In order to construe section 32-4-113(1)(l)(VI) and determine the legislative intent, we must analyze part 1 of article 4 of title 32, which relates to the organization and powers of "Water and Sanitation District." We must determine the real and underlying objects and purposes of part 1, and the construction we place upon the perpetual lien section must harmonize with such objects and purposes. *People v. Sanitation District,* 128 Colo. 33, 261 P.2d 152 (1953).

Fundamental to our resolution of the issue is the declared public policy of the state which is found in the two following quotations:
"It is declared that the organization of water and sanitation districts, having the purposes and powers provided in this part 1, will serve a public use and will promote the health, safety, prosperity, security, and general welfare of the inhabitants of said districts." Section 32-4-101, C.R.S. 1973.
"This part 1, being necessary to secure and preserve the public health, safety, convenience and welfare, shall be liberally construed to effect its purposes." Section 32-4-130, C.R.S. 1973.

The organization of a water and sanitation district is initiated by filing a petition with the clerk of the district court signed by not less than ten percent or one hundred (whichever is the smaller) taxpaying electors of the district. The court fixes a hearing date, conducts a hearing and authorizes an election. If a majority of the votes cast favor the organization of the district, the court declares the district organized. "Thereupon the district shall be a governmental subdivision of the state of Colorado and a body corporate with all the powers of a public or quasi-municipal corporation." Section 32-4-107(7), C.R.S. 1973.

---

[2] *U.S. Const.* Art I, Sec. 10; *U.S. Const.* Amend. V.; *Colo. Const.* Art. II, Sec. 11; *Colo. Const.* Art. II, Sec. 25.

The board of directors is given broad powers to accomplish its purposes, including the powers of eminent domain and dominant eminent domain for the condemnation of private property and the power to construct and maintain works and establish and maintain facilities across or along any public street or highway or over any vacant public lands. Section 32-4-113, C.R.S. 1973. In addition to other means of providing revenues, the board is given the power to levy ad valorem taxes, to issue bonds, to fix fees, and to fix reasonable charges for making water and sewer facilities and services available.

## Analysis

There are certain concepts in the law which are fundamental and must be considered in arriving at the answer to the problem posed by this appeal. A leading case in this area is the decision of the Supreme Court of Florida in *Lybass v. Town of Ft. Myers*, 56 Fla. 817, 47 So. 346 (1908). The reasoning in the *Lybass* case is sound. It has stood the test of time. *Krumpelman v. Louisville, Etc., Sewer District*, 314 S.W.2d 557, 75 A.L.R.2d 1110 (Ky. 1958); *Morrissey v. Shriver*, 88 Okla. 269, 214 P. 702 (1923); *Carstens & Earles, Inc. v. Seattle*, 84 Wash. 88, 146 P. 381 (1915); Annot., 75 A.L.R.2d 1121 (1961); Annot., 78 A.L.R. 513 (1931). The facts in *Lybass* are basically similar to those before us.[3]

■ The first basic concept from *Lybass* is that:

"All private rights and interests in real property in a municipality are subject to the statutory powers of the municipality to levy assessments for local improvements pursuant to its governmental functions; and the legislature may create liens upon private property in favor of a municipality for local improvements, and to make such liens superior to other liens acquired subsequent to the statute."

■ Another fundamental concept is set forth in the following paragraph:

"The intention of the law making power to give priority to a municipal lien for local improvements over contract liens of individuals may be implied from the language of the law creating the lien and from the nature and purpose of the lien. *Dressman v. Farmers' & Traders Nat. Bank*, 100 Ky. 571, 38 S.W. Rep. 1052; *Elliott on Roads & Streets* (2nd ed.) § 599; *Provident Inst. for Sav. v. Jersey City*, 113 U.S. 506, 5 Sup. Ct. Rep. 612; *Wabash East Ry. Co. of Ill. v. Commissioners East Lake Fork Special Drainage Dist.*, 134 Ill. 384, 25 N.E. Rep. 781; *Seattle v. Hill*, 14 Wash. 487, 45 Pac. Rep. 17; 25 Am. & Eng. Ency. Law (2nd ed.) 1236."

---

[3] "The Town of Ft. Myers filed in the Circuit Court for Lee county a bill in equity to enforce a lien for sidewalk assessments upon real estate of James A. Henry, in the town of Ft. Myers, upon which property T.M. Lybass held a mortgage anterior in date to the lien of the town for sidewalk assessments." (From the opinion, p. 820.)

In other words, priority of liens for a public improvement need not be expressly spelled out in the statute.

Florida law delegated to the town council the power "to require owners of real estate within the corporate limits to construct uniform and substantial sidewalks" around their lots, and to keep them in repair; "and upon failure to do the same" the council may have the same done, "which shall be a lien against said lots," which lien may be enforced in the same manner as other liens.[4]

The *Lybass* court pointed out that the mortgage lien was taken subject to both the statute authorizing the municipal governmental lien for sidewalk improvements and to other governmental demands for taxes and municipal assessments, thus, in effect, holding that such an assessment was a species of tax.

■ Although the charges for installing sewer services to a particular property are not taxes in the strict sense of the term, they are, like special assessments, in the nature of taxes. *See discussion, Krumpelman v. Louisville, Etc., Sewer District, supra* at 561. The owner of the property and the mortgage alike are at all times subject to the taxing power of the state. *City Electric Co. v. City of Albuquerque,* 258 P. 573 (N. Mex. 1927) and cases cited therein. The Illinois Supreme Court in *Wabash E. Ry. Co. v. Commissioners of East Lake Fork Special Drainage Dist.,* 134 Ill. 384, 399, 25 N.E. 781, 785 (1890), made these pertinent observations:

"Special assessments are a species of taxation, peculiar in their nature, it is true, and subject to special rules; but the power to levy them is clearly referable to the taxing power. As said by Judge Cooley in his Treatise on Taxation, 'That these assessments are an exercise of the taxing power has over and over again been affirmed, until the controversy must be regarded as closed.' Cooley on Taxation, 623, and authorities cited in note. It follows that the lien given by the statute in case of such assessments is of the same nature, and subject to the same general rules, as that given in case of general taxes."

In *People v. Gym of America,* 177 Colo. 97, 493 P.2d 660 (1972), the Chief Justice, writing for a unanimous court, said:

"The United States Supreme Court has continually upheld the proposition that states possess authority to safeguard the vital interest of their citizens. [Citations omitted.] The Supreme Court has also indicated that state

---

[4] A parallel provision is Section 32-4-113(1)(m), C.R.S. 1973, which authorizes the District board: "For health and sanitary purposes, to compel the owners of inhabited property within a sanitation district to connect their property with the sewer system of such district, and, upon a failure so to connect within sixty days after written notice by the board so to do, the board may cause such connection to be made *and a lien to be filed against the property* for the expense incurred in making such connection. . . ." (emphasis added)

legislatures have wide discretion to determine what is and what is not necessary, under their police power, to protect the general welfare. [Citations omitted.] Colorado has likewise recognized the broad power of the legislature in the area of police power. *Western Colorado Power Co. v. P.U.C.,* 159 Colo. 262, 411 P.2d 785; *Eachus v. People,* 124 Colo. 454, 238 P.2d 885; *In Re Interrogatories of Governor on Chapter 118, Session Laws of 1935,* 97 Colo. 587, 52 P.2d 663."

■ The General Assembly having declared in section 32-4-101 that the organization of water and sanitation districts serves a public use and will promote the health, safety, prosperity, security and general welfare of the inhabitants of the district, it follows that if the sewer and water districts are to remain viable institutions capable of accomplishing their purposes, their charges cannot be subordinated to prior recorded deeds of trust. *See Delahunt v. Oklahoma County,* 226 F. 31 (1915).

■ A further basic proposition enunciated in the *Lybass* opinion relates to enhancement of value. It states:

"The lien is for an improvement that enhances the value of the property and consequently the value of all liens upon it. The improvement is primarily for a governmental purpose in the interest of the public welfare, and as such is entitled to priority if so intended by the legislature. *The exigencies of all governments justify giving to governmental taxes, assessments and demands priority over private rights.*

"As the lien is given by law in return for benefits to the property as well as the common good, and as the action of the town is in its governmental capacity, the demand is in the nature of a governmental assessment and has priority over the rights of all persons having an interest in the property if it can be gathered from the language and purpose of the law that such was the intention of the lawmaking power." (emphasis added)

■ Although in searching for legislative intent it is necessary to consider all of the sections of part 1, as we have done, it is also essential to consider the language of the particular section with which we are concerned. In carrying out this responsibility we must keep in mind the rules of the legislature in reference to the construction of statutes as set out in parts 1 and 2 of article 4 of title 2, C.R.S. 1973. For instance, words and phrases shall be read in context and construed according to the rules of grammar and common usage. Section 2-4-101. In enacting a statute, it is presumed that a just and reasonable result is intended and that the public interest is favored over any private interest. Section 2-4-201(c),(e).

■ Section 32-4-113(1)(l)(VI) provides that "until paid" all *charges* shall constitute a "perpetual lien" against the property served. "Until" is a functional word to indicate continuance (as of an action, condition or state) up to a particular time. "Perpetual" means continuing forever; everlasting; eternal. *Webster's Third International Dictionary.* "Until" and "perpetual" in the context in which they have been used are

words which forcefully indicate that the legislature intended to favor the district's public lien over that of the private lender.

Section 32-4-113(1)(l)(VI) then provides for the foreclosure of the perpetual lien in the same manner as mechanics' liens. It is reasonable to assume that in adopting the procedural aspects of the mechanic's lien statute the lawmakers equated the special lien of the sewer and sanitation district with a mechanic's lien. A mechanic's lien given by article 22 of title 38, C.R.S. 1973, is based upon equitable considerations of natural justice; namely, that one who has enhanced the value of property by his labor or material is entitled to a superior lien if he follows certain prescribed procedures. *3190 Corp. v. Gould,* 163 Colo. 356, 431 P.2d 466 (1967); *Jackson v. A.B.Z. Lumber Co.,* 155 Colo. 33, 392 P.2d 288 (1964); *Bishop v. Moore,* 137 Colo. 263, 323 P.2d 897 (1958); *Darien v. Hudson,* 134 Colo. 213, 302 P.2d 519 (1956).

The connection of a new building to a sewer system enhances its value in direct proportion to the cost in the same manner as a mechanic's labor enhances the value of a structure. Concomitant with this philosophy is the underlying rationale that by giving priority to such a lien it will preclude unjust enrichment by the property owner. *Kobayashi v. Meehleis Steel Co.,* 28 Colo. App. 327, 472 P.2d 724 (1970).

### Conclusion

The district was organized in 1961. Consequently, Hogenson; Western Securities Company, the initial mortgagee; and Great-West all were on notice of the provisions of the Water and Sanitation District Act and took their respective interests in the property subject to the statutory powers and rights of the District. In view of section 32-4-113(1)(m), the mortgage lenders also knew, or should have known, that a portion of the proceeds of the loan would have to be used to connect the new building to the sewer system even if Hogenson did not choose to connect.

The lien of the district is for an improvement to the property which enhances its value and all liens upon it in direct proportion to its cost, and but for which improvement the property could not be put to its intended use. *Lybass v. Ft. Myers, supra.* Justice and equity mandate that property which is so benefitted be subject to a lien for the cost of the improvement. The improvement advances the interest of the public health, safety and welfare, and the public policy of this state, as gleaned from part 1 of the Water and Sewer District Act, dictates our holding that the District's lien be given priority over the private lien of the private lender.

The judgment is reversed, and the cause is remanded to the trial court for the entry of a judgment not inconsistent with the views herein expressed.