25CA0854 Denver v Welcome 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0854
City and County of Denver District Court No. 24CV31083
Honorable Mark T. Bailey, Judge

---

City and County of Denver, a home rule City and municipal corporation,

Plaintiff-Appellee,

v.

Welcome To Realty 401k PSP, a Colorado Trust,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

Miko Brown, City Attorney, Michele A. Horn, Senior Assistant City Attorney, Adam Hernandez, Assistant City Attorney, Denver, Colorado, for Plaintiff-Appellee

Hatch Ray Olsen Conant LLC, Christopher J. Conant, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Welcome to Realty, LLC 401k PSP (Welcome), appeals the district court's judgment in favor of plaintiff, the City and County of Denver (the City). Welcome purchased real property at a sheriff's sale and contends that an affordable housing covenant requiring only income-eligible persons to own the home was extinguished as part of the foreclosure action. We disagree and, therefore, affirm.

## I.    Background

¶ 2    The Town Center Metro District (District), located in Denver, was created in 1983 pursuant to sections 32-1-101 to -1807, C.R.S. 2025. In 2002, the City enacted an ordinance to establish a supply of moderately priced dwelling units (affordable units). Denver Rev. Mun. Code § 27-101. The ordinance provides that housing developments meeting certain requirements must designate a portion of units as affordable units. *See id.* § 27-105. The ordinance also places restrictions on the affordable units, such as maximum sales price, ownership eligibility based on income, and rental prohibitions (affordability restrictions). *See id.* §§ 27-103(v), -109 to -111.

¶ 3    In the early 2000s, a developer constructed a housing development within the District.  The developer designated certain homes as affordable units, including the property at issue.  The property's status as an affordable unit subject to the ordinance was memorialized in a covenant (affordability covenant) recorded with the Denver Clerk and Recorder in September 2004 and re-recorded in March 2005.  In addition to the affordability covenant, the property was subject to the District's enforcement covenant (the District covenant), which included the District's authority to charge certain fees and rates under section 32-1-1001(1)(j)(I), C.R.S. 2021.[1]

¶ 4    In 2005, the property was sold to Gildardo Gonzalez, Jr. (Gonzalez).  During the next several years of Gonzalez's ownership, the District enforced the District covenant against him and assessed fines relating to his failure to maintain landscaping and

---

[1] The General Assembly has since amended this provision, placing limits on special district boards concerning the types of unpaid assessments that might be subject to foreclosure and imposing certain procedural due process requirements on the board before initiating foreclosure proceedings when authorized.  See Ch. 117, secs. 1, 3, §§ 32-1-1001, -1004.5, 2024 Colo. Sess. Laws 377-79; Ch. 230, sec. 2, § 32-1-1001, 2024 Colo. Sess. Laws 1412-13.  These amendments are not at issue in this case, and throughout this opinion we apply section 32-1-1001, C.R.S. 2021, which was the version in effect at the time of the foreclosure action.

fencing. Gonzalez did not pay the fines. As a result, the District recorded a statutory lien against the property in 2018. In 2021, the District initiated an action to foreclose on the lien (foreclosure action). The district court in the foreclosure action issued a decree of foreclosure. The sheriff held a foreclosure sale and Welcome purchased the property.

¶ 5 The City then brought this action against Welcome, contending that the property remained subject to the affordability covenant and that because Welcome was not an "eligible household," it could not own the property. Welcome argued that the affordability covenant was subordinate to the District's lien and was extinguished in the foreclosure action. The district court agreed with the City that the property remained subject to the affordability covenant, determined that Welcome was therefore ineligible to own the property, and entered judgment in favor of the City.

¶ 6 Welcome appeals and asserts that (1) the district court erred by holding that the District's lien was subordinate to the affordability covenant; (2) the City's claims against Welcome were an impermissible collateral attack against the foreclosure decree

and the foreclosure statutes preempt the City's ordinance; and (3) the term of the affordability restrictions should not have been extended.

## II. Priority Status of the District's Lien

¶ 7 Welcome raises separate arguments but we distill them to this main contention: The district court erred by distinguishing or limiting *Wasson v. Hogenson,* 583 P.2d 914 (Colo. 1978) — a case that, according to Welcome, held a special district's lien enjoys superior status to all other liens — because, if read properly, the holding compels the conclusion that the District's lien was senior to the affordability covenant, resulting in its extinguishment as part of the foreclosure action.[2]  We are not persuaded.

### A. Standard of Review

¶ 8 A district court's interpretation of statutes and case law is a question of law we review de novo.  *See Simpson v. Bijou Irrigation Co.,* 69 P.3d 50, 58 (Colo. 2003).

---

[2] Welcome uses the term "super-priority" to argue that the District's lien is superior to the affordability covenant, but we do not find usage of that term in the case law or relevant statutes that Welcome relies on.

## B.    Lien Priority and *Wasson*

¶ 9    No party disputes that the District is a special district. At the time of the foreclosure action and under section 32-1-1001(1)(j)(I), the board of a special district had the authority "[t]o fix and from time to time to increase or decrease fees, rates, tolls, penalties, or charges for services, programs, or facilities furnished by the special district." That provision also stated that "[u]ntil paid, all such fees, rates, tolls, penalties, or charges shall constitute a perpetual lien on and against the property served, and any such lien may be foreclosed in the same manner as provided by the laws of this state for the foreclosure of mechanics' liens." *Id.* The mechanics' lien statute states that liens "relate back to the time of the commencement of work" and that the lien shall have priority over junior liens and encumbrances. § 38-22-106(1), C.R.S. 2025. And the foreclosure statute states that after a foreclosure decree enters, title to the property vests "free and clear of all liens and encumbrances junior to the lien foreclosed." § 38-38-501(1), C.R.S. 2025; *see also Reishus v. Bullmasters, LLC*, 2016 COA 82, ¶ 37 (a real covenant is a form of encumbrance on land that must touch and concern the land, which it does "if it 'closely relate[s] to the

5

land, its use, or its enjoyment'" (quoting *Cloud v. Ass'n of Owners, Satellite Apartment Bldg., Inc.*, 857 P.2d 435, 440 (Colo. App. 1992))).

¶ 10    All this legal authority leads Welcome to rely on *Wasson*, 583 P.2d at 917 and its progeny, *North Washington Water & Sanitation District v. Majestic Savings & Loan Ass'n*, 594 P.2d 599 (Colo. App. 1979), and *Skyland Metropolitan District v. Mountain West Enterprise, LLC*, 184 P.3d 106 (Colo. App. 2007).  Those cases, Welcome argues, stand for the proposition that all special district liens under section 32-1-1001(1)(j)(I) are in the nature of general tax liens, so they are superior to all other liens or encumbrances. Indeed, it argues that, regardless of the type of special district and assessments at issue, the District lien is equivalent to a general tax lien and thus superior to the affordability covenant.

¶ 11    We agree with the district court, which held that *Wasson* and its progeny are specific to water and sanitation districts — not necessarily *all* special districts — so the District's lien filed against the property was not superior to the affordability covenant.  We reach this conclusion for three reasons.

6

¶ 12    First, Welcome reads *Wasson* and its progeny too broadly, as nothing in the cases suggest that all special district assessments enjoy the superior status afforded those of water and sanitation districts.

¶ 13    The issue in *Wasson* was whether a deed of trust was junior in priority to a water and sanitation district's lien for sewer installation charges incurred even though the private deed of trust was recorded before installation of the sewer service. 583 P.2d at 915. The supreme court concluded that the water and sanitation district's lien was senior in priority because the owners of the home took their interests with the knowledge that the property was not inhabitable without installation of water and sewer services and the water district had an interest in collecting fees related to its installation services since the district was organized in 1961. *Id.* at 919. As a result, the *Wasson* court equated charges for installation of the sewer services with an assessment "in the nature of taxes" because the services enhanced the value of the property. *Id.* at 917, 919. In reaching this conclusion, the court also noted that allowing the water and sanitation district to foreclose on its lien in the same manner as a mechanic's lien fulfils the equitable consideration that

"one who has enhanced the value of property *by his labor or material* is entitled to a superior lien if he follows certain prescribed procedures." *Id.* at 919 (emphasis added).

¶ 14    *North Washington* applied *Wasson*, holding that the water and sewer tap fees at issue in that case were also in the nature of taxes and thus superior to a deed of trust executed by the owners in favor of a mortgage company. *See N. Washington*, 594 P.2d at 601. And *Skyland* held that because the water and sanitation district charges at issue were in the nature of taxes, the district's lien was already perfected, so notice on the developer was not required. *See Skyland*, 184 P.3d at 116. We read nothing in these cases to suggest that the supreme court or divisions of this court considered — much less held — that *all* special district liens are similar to tax liens and should be superior to other types of encumbrances.

¶ 15    Second, we decline to extend *Wasson* and its progeny beyond the water and sanitation district context because not all special districts, even if they impose assessments on property owners, have the same purpose. As noted above, *Wasson* placed significant emphasis on the fact that the water and sanitation district worked

8

on the property, so even though the deed of trust was recorded first, it was unequitable for the district's lien to be junior.

¶ 16    Here, the District is a metropolitan district that engages in enforcement of the District covenant.  The District assesses fines against properties in the community if the homeowners, among other things, fail to maintain landscaping and fencing, engage in offensive activity, or lack enclosures to shelter unsightly equipment and objects.[3]  *See* § 32-1-1001(1)(j)(I).

¶ 17    According to the ledger of fines imposed against Gonzalez for enforcement of the District covenant, none of the fines were in connection with the District conducting work on Gonzalez's property for its improvement.  Although the District would likely argue that its covenant provisions are intended to improve property value, such neighborhood-improvement-type restrictions are markedly different from the work undertaken by the water and sanitation districts at issue in *Wasson* and its progeny, which

---

[3] The district court's judgment referenced documents from the foreclosure action.  We take judicial notice of those documents as they are relevant to our analysis.  *See Harriman v. Cabela's Inc.*, 2016 COA 43, ¶ 64 (noting that appellate courts may take judicial notice of court records in related proceedings under CRE 201(f)).

directly improved the property. In short, the District's fines in this case are wholly different from and not in the nature of a general tax as contemplated by *Wasson.*

¶ 18    Finally, based on a plain reading of section 32-1-1001(1)(j)(I), which at the time authorized the District to foreclose on a lien in the manner of a mechanic's lien without further procedures, section 38-22-106(1) requires us to look at when the lien came into existence from "the time of the commencement of work." *See Castillo v. STEM Sch. Highlands Ranch,* 2025 COA 88, ¶ 22 (when interpreting statutes, a court must apply the words in accordance with their plain and ordinary meaning). The affordability covenant was recorded in 2004. The District assessed its first fine against Gonzalez in 2015. There is no evidence that the District did any "work" on Gonzalez's property dating back to when the District was formed in 1983. Given these facts, the affordability covenant is unequivocally senior in priority to the District's lien because the District's "commencement of work" as it relates to the District covenant occurred eleven years *after* the affordability covenant was recorded.

¶ 19    Therefore, the district court did not err by holding that the affordability covenant was not extinguished as part of the foreclosure action.

### III.    Collateral Attack and Preemption

¶ 20    Welcome asserts that the City's lawsuit is a collateral attack against the foreclosure decree and that its ordinance was preempted by state law.  We disagree.

### A.    Standard of Review

¶ 21    Whether a claim collaterally attacks a judgment is a question of law we review de novo.  *McClure v. JP Morgan Chase Bank NA*, 2015 COA 117, ¶ 25, *aff'd*, 2017 CO 22.  Similarly, whether state law preempts a municipal ordinance is a question of law reviewed de novo.  *Webb v. City of Black Hawk*, 2013 CO 9, ¶ 16.

### B.    Analysis

¶ 22    Welcome asserts that the City's claims are an impermissible collateral attack on the foreclosure decree because the decree was a complete adjudication of the rights of all parties, the decree did not limit who could purchase the property, and the City's enforcement of the affordability covenant conflicts with the foreclosure decree.

¶ 23    A collateral attack on a district court judgment is "an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law." *Brennan v. Grover*, 404 P.2d 544, 546 (Colo. 1965) (quoting 49 C.J.S. *Judgments* § 408b (1947)).

¶ 24    The affordability covenant does not challenge the foreclosure decree. Local governments have the authority to regulate land use, including regulating the development of affordable housing units. *See* § 29-20-104(1)(e.5), C.R.S. 2025. While the affordability covenant may limit who can ultimately own the property, it does not attempt to avoid, defeat, evade, or deny the force and effect of the foreclosure decree by limiting who could bid on the property. The City's claim seeking to enforce the affordability covenant is a separate cause of action that arose based on the actions taken by Welcome after entry of the foreclosure decree. *See Emerick v. Greene*, 575 P.2d 441, 443 (Colo. App. 1977) (holding that when a party's claim does not challenge a foreclosure decree itself but "is dependent upon [an] action" following entry of a foreclosure decree, "the present action is not a collateral attack upon the foreclosure decree"). Therefore, we reject Welcome's collateral attack argument.

12

¶ 25    Next, Welcome asserts that Colorado's foreclosure statutes do not impose affordability restrictions, so those statutes preempt the City's affordability restrictions ordinance.

¶ 26    Affordable housing "is a matter of mixed statewide and local concern." § 29-35-201(2)(c), C.R.S. 2025. "[I]n matters of mixed state and local concern, local ordinances may coexist with state statutes as long as the local ordinances do not conflict with the state statutes." *City of Fort Collins v. Colo. Oil & Gas Ass'n*, 2016 CO 28, ¶ 14. A state law may preempt a local ordinance "expressly, impliedly, or because of an operational conflict." *Id.* at ¶ 18. Express preemption occurs when the legislature "clearly and unequivocally states its intent to prohibit a local government from exercising its authority over the subject matter at issue." *Id.* at ¶ 19. Preemption may be implied when the legislative intent is to occupy a given field. *Id.* at ¶ 20. And preemption by operational conflict occurs when "effectuation of a local interest would materially impede or destroy a state interest." *Id.* at ¶ 21.

¶ 27    Colorado foreclosure statutes do not preempt local affordable housing ordinances. It is true that Colorado foreclosure statutes do not impose affordability restrictions, but likewise, those same

13

statutes do not prohibit such local restrictions, either expressly or impliedly. Nor is there any indication that the General Assembly intended the foreclosure statutes to occupy the field of affordable housing. And enforcing affordability restrictions does not "materially impede or destroy" the state's interest in the foreclosure process because the main goal of foreclosing on properties is still effectuated.

¶ 28 When a property subject to an affordability restriction is subject to foreclosure, nothing in the foreclosure statutes prohibits that process. The property can still be foreclosed on and sold to "the highest bidder" subject to any recorded affordability restrictions. Welcome bid on the property with the risk that it might not ultimately be able to own it if it did not meet the affordability covenant requirements. And as noted above, that covenant was recorded with the Clerk and County Recorder, so Welcome had notice of these restrictions. Thus, we reject Welcome's argument on this basis as well.

IV. The Term of Affordability Restrictions

¶ 29 Welcome argues that the district court erred by extending the City's term of affordability restrictions. We disagree.

14

## A. Standard of Review

¶ 30 The interpretation of a municipal ordinance is a question of law we review de novo. *See City of Golden v. Sodexo Am., LLC*, 2019 CO 38, ¶ 22.

## B. Analysis

¶ 31 The affordability covenant states that the restrictions shall be implemented for a twenty-year term. If there is a period of time during that term when the affordability restrictions are violated, the City's ordinance provides a remedy by which the City may recapture a lost term of affordability. *See* Denver Rev. Mun. Code § 27-116(g)(3). In this situation, the affordability restrictions would have expired on May 27, 2025. Welcome argues that because it allowed individuals to reside in the property rent-free through trial in this case held March 3, 2025, there was never a period of time when the affordability restriction was violated. While not stated explicitly in the briefs, we presume that Welcome raises this argument because, if the affordability term is not extended, it ostensibly could still own the property because the property would no longer be subject to the affordability covenant.

¶ 32    The district court afforded the City an extension of the affordability restrictions for the period of time between the foreclosure sale and when Welcome sells the property to an eligible buyer.  We discern no error in the court's ruling.

¶ 33    The City argues, and we agree, that because Welcome was never qualified as an "eligible household" by the City's agency that manages affordable housing, simply having people live in the property rent free did not comply with the provisions of the affordability covenant.  Thus, the affordability covenant has not been complied with since Welcome purchased the property on December 2, 2021.  The City was entitled to recapture that period of time to ensure that the property was made available to an eligible resident for the full affordability covenant period.

¶ 34    Welcome's interpretation of the affordability restrictions is flawed.  Section 2.1(q) of the affordability covenant states that an "eligible household" is one that owns and occupies the household as a primary residence.  Welcome owns the property but never occupied it as its primary residence and is therefore not an eligible household.  Accordingly, Welcome's ownership of the property

16

constitutes a lost term of affordability that the district court properly determined the City was entitled to recapture.

## V.    Attorney Fees

¶ 35    Welcome requests that, if we reverse the district court's judgment, we award it its prevailing-party attorney fees and costs pursuant to section 6.7 of the affordability covenant.  Because we affirm the district court's judgment, we deny Welcome's request.

## VI.   Conclusion

¶ 36    The district court's judgment is affirmed.

JUDGE PAWAR and JUDGE GOMEZ concur.